

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00510-CV

IN THE INTEREST OF A.E.A.,
A CHILD

----------

FROM THE 431ST DISTRICT COURT OF DENTON COUNTY

----------

## OPINION

----------

### I. INTRODUCTION

This is an appeal from a bench trial in a high-conflict suit affecting the parent-child relationship.[1]  Appellant David Harris appeals from a judgment giving Appellee Ginger Adams the exclusive right to make decisions concerning the education of their son, A.E.A.  In two issues, David argues that the evidence is insufficient to support the trial court's finding of a material and substantial change

---

[1]On our own motion, we utilize fictitious names for the parents of A.E.A. *See* Tex. Fam. Code Ann. § 109.002(d) (West Supp. 2012).

in circumstances and that the trial court infringed on his due process rights.  We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

When David and Ginger divorced in February 2008, A.E.A. was enrolled in preschool and was about to turn five years old.  The divorce decree provided for joint conservatorship, and both David and Ginger were given "the right subject to the agreement of the other parent conservator, and further subject to the orders of the Court herein below[,] to make decisions concerning the child's education."  The divorce decree also included the following "Special Provisions for Education":

> 18.     The Court finds that it is in the best interest of the minor child to continue attending Crème de la Crème pre-school until such time as the minor child shall begin attending elementary school, AND IT IS SO ORDERED.
>
> 19.     The court finds that it is in the best interest of the minor child to attend Greenhill private school when he becomes eligible, AND IT IS SO ORDERED.  The Court further finds that the parties may agree in writing for the minor child to attend a different school[,] and in that event[,] the minor child shall attend the school so agreed upon, AND IT IS SO ORDERED.
>
> 20.   The Court finds that [DAVID HARRIS] shall continue to pay the expenses for the minor child to attend Crème de la Crème, AND IT IS SO ORDERED.
>
> 21.     The Court finds that [DAVID HARRIS] shall pay all tuition and expenses of the minor child to attend Greenhill private school including expenses necessary for the minor child to participate in school activities, AND IT IS SO ORDERED.
>
> 22.     The Court finds that since it will be necessary for [DAVID HARRIS] to make arrangements to pay for the expenses of

2

attending Greenhill private school, that [DAVID HARRIS] shall make any necessary application, enroll the minor child[,] and make any necessary arrangements with Greenhill private school in order for the minor child to attend, AND IT IS SO ORDERED.

After the divorce decree was signed, A.E.A. completed preschool and kindergarten at Crème de la Crème but was not granted admission to Greenhill. A.E.A. attended elementary school in the Plano Independent School District.

In September 2010, David filed a petition to modify the parent-child relationship in which he alleged that there had been a material and substantial change in circumstances since the signing of the divorce decree. Among the modifications David requested was that he be appointed as the person with the exclusive right to make decisions concerning the child's education.

Ginger answered and filed a counterpetition to modify, alleging that the circumstances had materially and substantially changed since the date of the divorce decree. Ginger requested, among other modifications, that she be appointed as the person with the exclusive right to make decisions regarding the child's education, including the decision of where the child shall attend school. Ginger also requested that temporary orders be made ordering David to pay child support.[2]

---

[2]The trial court signed temporary orders, ordering David to pay child support and retaining Dr. Linda Threats as the parenting facilitator to assist the parties in resolving parenting issues. David then amended his petition twice but did not alter his declaration that the circumstances had materially and substantially changed, nor did he alter his request to be named as the parent with the exclusive right to make decisions concerning the child's education.

3

After hearing argument on the competing motions, the trial court signed a modification order, setting aside as moot the entire section of the divorce decree entitled "Special Provisions for Education" and granting Ginger the exclusive right to make decisions concerning the child's education. David requested findings of fact and conclusions of law, which the trial court made, and filed a motion for new trial raising due process complaints. This appeal followed.

### III. JUDICIAL ADMISSION OF MATERIAL AND SUBSTANTIAL CHANGE IN CIRCUMSTANCES

In his first issue, David argues that there is no evidence of a material and substantial change in circumstances since the divorce decree was signed to warrant a modification of the final decree.

Under section 156.101 of the Texas Family Code, a trial court may modify conservatorship of a child if (1) the modification is in the child's best interest and (2) the circumstances of the child, a conservator, or other party affected by the existing conservatorship order have materially and substantially changed since the rendition of the existing order. Tex. Fam. Code Ann. § 156.101(a)(1)(A) (West Supp. 2012); *In re L.C.L.*, 396 S.W.3d 712, 718 (Tex. App.—Dallas 2013, no pet.). One party's allegation of changed circumstances of the parties constitutes a judicial admission of the common element of changed circumstances of the parties in the other party's similar pleading. *L.C.L.*, 396 S.W.3d at 718 (citing *Delaney v. Scheer*, No. 03-02-00273-CV, 2003 WL 247110, at *5 (Tex. App.—Austin Feb. 6, 2003, no pet.) (mem. op.)). Admissions in trial

4

pleadings are judicial admissions in the case in which the pleadings are filed; the facts judicially admitted require no proof and preclude the introduction of evidence to the contrary. *Id.*; *see also Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983). Thus, a "judicial admission is conclusive upon the party making it, . . . relieves the opposing party's burden of proving the admitted fact, and bars the admitting part[y] from disputing it." *Hennigan v. I.P. Petroleum Co.*, 858 S.W.2d 371, 372 (Tex. 1993) (quoting *Mendoza v. Fid. & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980)). This rule is based on the public policy that it would be absurd and manifestly unjust to permit a party to recover after he has sworn himself out of court by a clear and unequivocal statement. *U.S. Fid. & Guar. Co. v. Carr*, 242 S.W.2d 224, 229 (Tex. Civ. App.— San Antonio 1951, writ ref'd).

As set forth above, David and Ginger both filed motions to modify. David's first amended petition—his live pleading at the time of the modification hearing— alleged that "the circumstances of the child, a conservator, or other party affected by the order [t]o be modified have materially and substantially changed since the date of rendition of the order to be modified." Ginger filed a counterpetition to modify, alleging that "[t]he circumstances of the child or a person affected by the order have materially and substantially changed since the date of the rendition of the order to be modified." Thus, separately, both parties' modification claims required proof of the fact of changed circumstances of the child, a conservator, or other party affected by the order to be modified. *See* Tex. Fam. Code Ann.

5

§ 156.101(a)(1)(A). But David's allegation of changed circumstances constituted a judicial admission of that fact and established that element of Ginger's claim for modification, so Ginger was not required to put on proof of this admitted fact. And because David judicially admitted this element of Ginger's claim in his first amended petition to modify, David is barred on appeal from challenging the sufficiency of the evidence to support the fact he judicially admitted—a material and substantial change in circumstances. *See L.C.L.*, 396 S.W.3d at 719 (holding that because competing motions for modification had been filed, mother's allegation of changed circumstances in her counterpetition for modification constituted a judicial admission of that same essential element in father's claim for modification); *Casteel-Diebolt v. Diebolt*, 912 S.W.2d 302, 305 (Tex. App.—Houston [14th Dist.] 1995, no writ) (holding that in suit with counterpetitions to modify, mother had judicially admitted to material and substantial changes in the circumstances of her children in her pleadings and was therefore barred from challenging the sufficiency of the evidence to support the change of conservatorship); *Thompson v. Thompson*, 827 S.W.2d 563, 566 (Tex. App.—Corpus Christi 1992, writ denied) (holding that father had judicially admitted in his motion to modify that there had been a material and substantial change of circumstances and was therefore barred from challenging the sufficiency of the evidence to support the change of conservatorship); *Thornton v. Cash*, No. 14-11-01092-CV, 2013 WL 1683650, at *12 (Tex. App.—Houston [14th Dist.] Apr. 18, 2013, no pet.) (mem. op.) (holding that the Thorntons were

6

barred from arguing on appeal that there was no evidence that the circumstances had changed because they had judicially admitted this allegation in their petition in intervention and in their counterpetition for modification).[3] We overrule David's first issue.

---

[3]David argues in his reply brief that the statement in his first amended petition cannot be treated as a judicial admission because the statement was not "unequivocal." We reject David's argument for two reasons.

First, he argues that the statement is contradicted by a sentence made in his "Response to Counter Petitioner's Notice of Hearing on Temporary Orders and Request for Temporary Orders" that there had "been no material change in circumstance that would warrant a temporary order requiring Petitioner to pay child support." But unlike a motion to modify custody, a motion to modify a child support obligation does not require a showing of a material and substantial change in circumstances when three years have elapsed since the order was signed. *See* Tex. Fam. Code Ann. § 156.401(a)(2) (West Supp. 2012). Thus, David's statement of no change in circumstances for child support does not admit any element that he was required to prove concerning child support. And David does not challenge the child support order on appeal.

Second, the requirement that a statement be "unequivocal" in order to be treated as a judicial admission is listed, along with four other factors, in *Carr*. 242 S.W.2d at 229. In setting forth the five factors, the *Carr* court drew a distinction between judicial admissions in pleadings and testimonial admissions from the witness stand. *Id*. The *Carr* court warned that "[t]he attempt of some courts to draw an analogy between the statements of parties on the witness stand and judicial admissions contained in pleading and agreements of counsel is not entirely convincing" and then utilized the five factors to determine when a party's *testimonial declarations* would preclude recovery by the party. *See id*. Some cases, including two from this court, have nonetheless—despite *Carr*'s express language limiting application of the five-factor analysis to *testimonial admissions*—applied *Carr*'s five-factor analysis to judicial admissions set forth in pleadings. *Compare Lee v. Lee*, 43 S.W.3d 636, 641–42 (Tex. App.—Fort Worth 2001, no pet.) (setting forth five factors and correctly applying them to appellants' counsel's statements approving an inventory), *with Dickinson v. Dickinson*, 324 S.W.3d 653, 657–58 (Tex. App.—Fort Worth 2010, no pet.) (setting forth five factors and applying them to statements made in pleadings), *and Kaplan v. Kaplan*, 129 S.W.3d 666, 669–70 (Tex. App.—Fort Worth 2004, pet. denied) (setting forth five factors and applying them to statements in appellant's petition

## IV. NO ABUSE OF DISCRETION, NO DUE PROCESS VIOLATIONS

In his second issue, David raises five subissues arguing that the trial court abused its discretion and infringed upon his due process rights when the trial court (a) entered findings of fact without any evidentiary support, (b) severely limited his time for cross-examination of a recalcitrant witness, (c) allowed testimony from documents not previously produced, (d) allowed personal bias to affect its decision, and (e) made "a series of decisions . . . throughout the proceeding [that] resulted in the trivialization and evisceration of standard due process rights upon which [David had] relied and to which he was entitled." We address each of David's subissues below.

### A. Sufficiency Challenges to Findings of Fact

In subissue (a), David argues that nothing in the record supports the trial court's findings that (1) there was a material and substantial change in circumstances; (2) David made efforts to alienate A.E.A. from Ginger; (3) David engaged in communications that were vulgar, profane, or indecent toward Ginger; and (4) David failed and refused to engage in proper communication with Ginger regarding A.E.A.'s education in a manner that was consistent with good

---

for bill of review). Because *Carr's* five-factor analysis is expressly not applicable to judicial admissions allegedly made in pleadings, we do not apply them to the judicial admission in David's pleading. *See L.C.L.*, 396 S.W.3d at 719 (not applying five-factor analysis to judicial admission of material and substantial change in circumstances pleaded in modification suit); *Casteel-Diebolt*, 912 S.W.2d at 305 (same); *Thompson*, 827 S.W.2d at 566 (same); *Thornton*, 2013 WL 1683650, at *12 (same).

8

co-parenting.[4]  David further argues that the record does not support the trial court's conclusion of law that the Greenhill Private School provision in the divorce decree is moot and that the trial court did not issue adequate findings of fact.

The pertinent findings of fact and conclusions of law made by the trial court are set forth below:

### Findings of Fact – SAPCR

1.    Petitioner and Respondent are the parents of the following child:

> Name:  [A.E.A.]
> Sex:  Male
> Birth date:  03/24/2003

2.  It is in the best interest of the child that [David Harris] and [Ginger Adams] be retained as joint managing conservators of the child.  Further, it is in the best interest of the child that [Ginger Adams] have the exclusive right to make decisions concerning the child's education based upon the material and substantial change in circumstances of the child and the joint managing conservators since the date of the Final Decree of Divorce entered on February 7, 2008.  It is in the best interest of the child that all other rights and duties of the parties as joint managing conservators should remain as set forth in the Final Decree of Divorce entered on February 7, 2008.

---

[4]During oral argument, David's counsel asserted that English was not David's first language and that his communications with Ginger in English seemed harsher because of his language barrier.  The trial court, however, is the sole judge of the weight and credibility of the evidence, and the trial court had the opportunity to observe David's speech and language in the trial court and to take any language issues into account prior to making its findings of fact.  *See, e.g.*, *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003) (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 634–35 (Tex. 1986) (op. on reh'g)); *In re Marriage of Collier*, No. 07-09-00146-CV, 2011 WL 13504, at *2 (Tex. App.—Amarillo Jan. 4, 2011, no pet.).

**Findings of Fact – Possession**

. . . .

**Findings of Fact – Child Support**

. . . .

**Other Findings of Fact**

10.     The child has not been accepted to attend Greenhill Private School.

11.     Dr. Linda Threats has been unable to assist the parties in dealing with their conflict in her role as parenting facilitator[,] and the Court further finds as follows:

a.     the relationship between [Ginger Adams] and [David Harris] is a high conflict relationship, especially in the context of the child's education, primarily due to the improper conduct and condescending attitude of [David Harris];

b.     [Ginger Adams] has demonstrated a desire, willingness[,] and ability to engage in proper communication with [David Harris] regarding the child's education in a manner that is consistent with good co-parenting;

c.     [David Harris] has failed and refused to engage in proper communication with [Ginger Adams] regarding the child's education in a manner that is consistent with good co-parenting;

d.     [Ginger Adams] has demonstrated the ability to make decisions regarding the child's education that are in the best interest of the child and to communicate with [David Harris] regarding those decisions;

e.     [David Harris] has failed to demonstrate the ability to make decisions regarding the child's education that are in the best interest of the child and to communicate with [Ginger Adams] regarding those decisions;

10

f.    [David Harris] has engaged in conduct intended to alienate [Ginger Adams] from the child; and

g.    [David Harris] has engaged in communications that are vulgar, profane, obscene, indecent, coarse, insulting, disparaging, condescending, or offensive toward [Ginger Adams].

. . . .

## Findings of Fact as Conclusions of Law

15.    Any finding of fact that is a conclusion of law shall be deemed a conclusion of law.

## Conclusions of Law – Conservatorship

1.    [David Harris] and [Ginger Adams] should be retained as joint managing conservators of the child and that [Ginger Adams] should have the exclusive right to make decisions concerning the child's education.  All other rights and duties of the parties as joint managing conservators shall remain as set forth in the Final Decree of Divorce entered on February 7, 2008.

## Conclusions of Law – Possession

. . . .

## Conclusions of Law – Child Support

. . . .

## Conclusions of Law – Other

6.    The Special Provisions for Education contained in the Final Decree related to the child attending Greenhill Private School are set aside as moot.

7.    The appointment of Dr. Linda Threats as the Parenting Facilitator should be terminated.

8. The child shall continue to attend Kumon tutoring and karate as set forth in the Temporary Orders entered in this case on November 2, 2010, and the payment for such tutoring and karate shall remain as set forth in the Temporary Orders entered on November 2, 2010.

9. A mutual injunction as to both parties should be entered as to the following:

a. disturbing the peace of the child or of any other party.

b. hiding or secreting the child from the other party;

c. making vulgar, profane, obscene, indecent, coarse, insulting, disparaging, condescending, or offensive remarks regarding the other party or the other party's family in the presence or within the hearing of the child;

d. communicating with the other party in person, by telephone, electronically, or in writing in vulgar, profane, obscene, or indecent language or in a coarse, insulting, disparaging, condescending, or offensive manner;

e. threatening the other party in person, by telephone, electronically, or in writing to take unlawful action against any person; and

f. placing one or more telephone calls, anonymously, at any unreasonable hour, in an offensive and repetitious manner, or without a legitimate purpose of communication.

10. [Ginger Adams] shall be awarded a judgment of $20,000.00 against [David Harris] for attorneys' fees and costs, with post-judgment interest, until paid in full.

11. The Final Decree of Divorce signed on February 7, 2008 shall continue in full force and effect to the extent it is not expressly modified herein.

12

A trial court's findings of fact have the same force and dignity as a jury's answers to jury questions and are reviewable for legal and factual sufficiency of the evidence to support them by the same standards. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *see also MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 663 n.3 (Tex. 2009).

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996);

13

*Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex. 1996). When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex. 2002).

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *Pool*, 715 S.W.2d at 635; *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

**1. Finding of Material and Substantial Change in Circumstances**

Regarding David's first challenge to the findings of fact—that nothing in the record supports the finding that there was a material and substantial change in circumstances—as set forth above, David judicially admitted this fact in his pleadings and is thus precluded from challenging on appeal the sufficiency of the evidence to support this fact. *See L.C.L.*, 396 S.W.3d at 719; *Casteel-Diebolt*,

14

912 S.W.2d at 305; *Thompson*, 827 S.W.2d at 566; *Thornton*, 2013 WL 1683650, at \*12.  We overrule this portion of David's subissue (a).

### 2. Finding that David Has Engaged in Conduct Intended to Alienate A.E.A. from Ginger

David challenges the trial court's finding of fact that he had engaged in conduct intended to alienate A.E.A. from Ginger.  Specifically, David argues that the finding lacks evidentiary support, and he attempts to show that it was Ginger who attempted to alienate the child from him.  The record, however, reveals that as part of his modification request, David was pursuing a possession schedule in which A.E.A. would spend seven days with him and then seven days with Ginger. In addition, David requested that he be allowed to pick up A.E.A. every day from school and keep him from 2:30 to 6:30 p.m.—even during the weeks that A.E.A. is supposed to be with Ginger—so that David could work with A.E.A. on his homework and take him to his afterschool activities.  David testified that he was not willing, however, to let Ginger pick up A.E.A. on David's days when David is not available to pick up A.E.A. after school.  Moreover, after Ginger's father passed away, David e-mailed Ginger:  "Don't keep [A.E.A.] in the house with you for [the] next few days.  He should not witness all the sorrow that is going on, it will be too hard on him."  David further urged Ginger:  "Don't take [A.E.A.] to [the] funeral tomorrow[;] he is too young and fragile[;] it will be too hard for him to handle."  The preceding, viewed in the light most favorable to the trial court's finding of fact, constitutes more than a scintilla of evidence that David engaged in

15

conduct intended to alienate A.E.A. from Ginger and is legally sufficient to support the trial court's finding. Furthermore, after considering and weighing all of the evidence in the record pertinent to that finding, we cannot say that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be unfound. We therefore overrule this portion of David's subissue (a).

### 3.  Finding that David Engaged in Vulgar, Profane, or Indecent Communications with Ginger

David also challenges the sufficiency of the evidence to support finding of fact 11g, which states that David "engaged in communications that are vulgar, profane, obscene, indecent, coarse, insulting, disparaging, condescending, or offensive toward [Ginger]." Specifically, David argues that his communications with Ginger did not rise to the level of "vulgarity, profanity, or indecency."

Of the 724 pages of exhibits that were admitted at trial, most contain e-mails from David to Ginger that include statements like the following, which are set forth exactly as they appear in the record with the exception that the child's name has been reduced to initials:

- The way you are steering this child's education, you can be sure he will end up one just like your brothers or yourself who is working in dept. store selling cosmetics at age of almost 50. What other grade plans do you have for his future? may be driving cab like your father does.

- The latest approach that you have taken by sweet talking his teacher to make sure he will get passing grade will not work. You did the same thing when you were going to school and finally got your useless degree, is this what you have in mind

16

for him, or either marry a professional wife who will work and bring money home when he sits at home playing video games. I am sure you know who I am referring to, or get a degree like you did and work in department store.

- I am trying to figure out what is a good word to use for people like you ! if I call you a MOTHER I think I would be insulting every good mother in this world, if I call you a NANY I think they spend more times with the kids that they take care of and do more things for them than you have ever done for [A.E.A.], and if you want examples I will give you a few.

- When are you going to make [A.E.A.] priority in your life rather than yourself to come first and him second??

- Last Wednesday when I took [A.E.A.] to his Karate class when he took his socks off to go to his DoJo, I saw the socks that he is wearing don't match.  You send this child out of your house without matching socks, don't even provide him with the bare necessity for his school function.

- I don't know if you understood what Mrs. Stow said about [A.E.A.]'s math., "he is right on the river" this is the same child who was ahead in math. when he was in first grade.  He was going to different tutoring classes last year until you pulled him out of that one and enrolled in math. in Kumon.  This is what Mrs. Stow had to say about Kumon "their academic is repetitious, you can buy their works at any grocery store" I suggest you ask her what she think about Kumon.  Why haven't you realized this yourself?  don't you work with [A.E.A.] on his Kumon homework's? He does the same homework's for his reading, writing and math. over and over, it has been like this for long time.  You had to sign him up for Study Buddy for his reading and writing now he is failing math. Every time you have tried to make decision for education of this child you have made wrong one.

- You are destroying this child's future with your repeated wrong decisions you are making for him.  CAN YOU DO ONE THING RIGHT FOR HIM????

- I have told you so many times, if you don't have the time or desire to attend to his needs to let me know and I will do it.

17

You don't have the time to take him to his swimming classes, ice scatting classes, study with him, help him on his school projects, take him to his Martial art classes, take him to his Summer Camp, even attend his birth day parties with his friends when you are invited so far ahead of time and then you ask me to sign him up for Piano classes. What kind of mother are you any way. Take this as the last warning, either start taking care of this child the way he needs to be taking care of or I will take you back to court and let the legal system make you do it.

- Unfortunately these facts are too advance for your comprehension and probably don't even know what I am talking about now or ever. You are the cause of his unhappiness and being under so much pressure from his unfit friends at school, you are the cause of his tears. Does any of these matter to you, we both know the answer.

- [A.E.A.] gave me your message about, you not wanting to take him to his karate classes if I don't sign him up in Kumon for Summer time. Give me one reason he should go to Kumon in Summer time! he needs to rest in Summer time, his mind need to relax free of studing so that he will be ready for next year. What does him not going to Kumon has anything to do with his karate class?, or this is another one of your selfish reasons to stop his growth more than you already have.

- [Regarding Ginger's decisions to not allow A.E.A. to go to a friend's house:] "It will only takes a sick mind in a sick person to make a child cry, three times in two and a half hours."

- I looked at the poster you made for [A.E.A.] This poster was supposed to be done to show [A.E.A.]'s progression in his life by using collage, not about your family picture album. There are more pictures of your family and relatives then [A.E.A.]'s pictures. What this poster tells everyone who looks at it is how you feel about your family and relatives rather than subject matter about [A.E.A.]

- The T shirt you put on [A.E.A.] on Tuesday when you sent him to school didn't look good, it is too old and has been used too many times. Try to put better clothing on him, he deserves a lot better.

18

- The 100% Polyester Winter coat that [A.E.A.] was wearing today was too hot for him, he was complaining to be too hot this afternoon when I picked him up from school. Low this morning was only 52, either put on the Fall coat that I got him on for him or return it, so he can use it while he is here. There is no sense of you holding on to it and him not be able to wear it.

- You are taking a half sandwich to [A.E.A.]'s school at 8:15 a.m. when his lunch break is at 11:15, bread will get soggy by the time when he starts eating it, furthermore a half sandwich is not nearly enough to fill him up, what happened to salad or chips?, that is why some Wednesdays when I pick him up from school he tells me he is hungry, pay more attention to him. you have one hour for lunch every day and I am sure you eat descent meal, how about [A.E.A.]?, can you not take lunch to him at your lunch break?, Last week I saw the way you had him dressed and now his food. Asking me to take you and him to dinner is not what he needs. There are so many other important things he needs that you are denying him of. When are you going to start paying attention to his needs???

- Try not to give [A.E.A.] fried food such as french fries or chicken nugets more than once a week, in order to cut down on him eating too much of fried greasy food. Look at American Pediatricien Journal for month of July of this year.

- Before you heat up [A.E.A.]'s food in the microwave any longer than you already have, call Dr. Shams and let him tell you what kind of harm it can do to him.

- Don't start [A.E.A.] into wearing neckless, the next thing he will be asking is ear rings, noise rings and the list will go on. In this corrupt society specialy for teen agers, you either have to start showing them deciplin at the age that he is or deal with concequences later. Don't let you emotions and motherly love get on the way of making the right decisions for him. He is the only one you have.

Our review of the record demonstrates that David's e-mails to Ginger support the

trial court's finding that his communications were "coarse, insulting, disparaging,

19

condescending, or offensive." These descriptions are included in finding of fact 11g but are not challenged by David on appeal. Although David's emails may not rise to the level of "vulgar" or "profane," we note that the trial court's finding is clearly cast in the disjunctive, using the word "or" at the end of the list of adjectives modifying the type of communications. Because the trial court's finding is cast in the disjunctive and because the record contains legally and factually sufficient evidence to support the unchallenged portion of the trial court's finding that David's communications to Ginger were "coarse, insulting, disparaging, condescending, or offensive," we hold that the evidence is legally and factually sufficient to support finding of fact 11g. *Accord, e.g.*, *In re Rose*, 144 S.W.3d 661, 729 (Tex. Rev. Trib. 2004, no appeal) (stating that when the constitutional grounds for removal are stated in the disjunctive, error as to one of the grounds is harmless; in order to prevail, the judge must show that none of the Commission's conclusions is correct). We overrule this portion of David's subissue (a).

### 4. Finding on Co-parenting

David challenges finding of fact 11c—which states that David has failed and refused to engage in proper communication with Ginger regarding the child's education in a manner that is consistent with good co-parenting—arguing in a portion of one sentence that there is no evidence in the record with respect to his co-parenting abilities. We cannot agree; the record is replete with evidence of David's co-parenting style. The portions of the e-mails from David to Ginger that

20

are set forth above—including those that deal with A.E.A.'s education—show that many of David's communications with Ginger are "coarse, insulting, disparaging, condescending, or offensive." As such, they demonstrate that David has failed to engage in proper communication with Ginger regarding A.E.A.'s education and are inconsistent with good co-parenting.[5] After reviewing the record, we hold that the evidence is legally and factually sufficient to support finding of fact 11c. We overrule this portion of David's subissue (a).

**B. Conclusion of Law that Greenhill Provision in Decree Is Moot**

David also challenges the trial court's conclusion of law that the provision in the decree regarding Greenhill Private School is moot. He argues that this conclusion does not flow from the record, from the relief requested, or from the evidence.

Following the modification hearing, the trial court gave Ginger the exclusive right to make decisions concerning A.E.A.'s education. Because the trial court gave Ginger the exclusive right to decide where A.E.A. attends school, the Greenhill Private School provision in the divorce decree was no longer

---

[5]In the final decree, the trial court

> ORDERED that the parties shall conduct themselves at all times in a manner that will minimize the exposure of the child to harmful parental conflict. Each party is ORDERED not to make negative remarks about the other party or the other party's family. Each party is further ORDERED to be respectful to the other party and the other party's family in the presence of the child. The parties are ORDERED to communicate with each other in a polite, civil, and cooperative manner and to attempt to resolve disputes concerning the child with dignity and by focusing on the best interest of the child.

21

appropriate or necessary. Moreover, as set forth above, finding of fact 10 states, "The child has not been accepted to attend Greenhill Private School." It is undisputed that A.E.A. was denied admission to Greenhill Private School by a letter dated March 13, 2009, and that David did not attempt to reapply for admission for A.E.A. in 2010, 2011, or 2012.[6] The trial court therefore did not abuse its discretion by entering a conclusion of law declaring the Greenhill Private School provision in the divorce decree to be moot. *See, e.g.*, *Grant v. Grant*, 358 S.W.2d 147, 148 (Tex. Civ. App.— Waco 1962, no writ) (explaining that "[a] case, issue, or proposition is, or becomes moot or abstract, when it does not, or ceases to rest on any existing fact or right"). We overrule this portion of David's subissue (a).

### C. Adequacy of Findings for Both Prongs of Modification

To the extent that David argues that the "findings issued by the trial court are devoid of essential facts to justify the court's conclusion that its decision met both prongs that must be satisfied to grant a modification," we cannot agree. We have held above that the first prong—a material and substantial change in circumstances—was judicially admitted, and we have also held that the evidence is legally and factually sufficient to support the findings of fact that were challenged by David that support the second prong—best interest. The evidence

---

[6]Ginger's counsel argued during oral argument that the trial court also could have determined that it was not in A.E.A.'s best interest to repeatedly be rejected from Greenhill Private School, to attend a difficult school he could not keep pace in, or to transfer to a school away from his friends.

is thus legally and factually sufficient to support both of the statutory elements required for modification,[7] and we overrule this portion of David's subissue (a).

Having determined that the record contains legally and factually sufficient evidence to support the trial court's findings of fact and conclusions of law, we overrule David's subissue (a) in total.

## D. David Failed to Object and Make an Offer of Proof Regarding Any Due Process Violations that Occurred During Cross-Examination

In subissue (b), David argues that the trial court infringed on his due process rights when it refused to allow him to meaningfully cross-examine Ginger. Specifically, David complains that he had only ninety-eight seconds remaining to cross-examine Ginger. The record reveals that the trial court allowed each side two and a half hours to present his or her case. Throughout the course of the modification hearing, the trial court gave each party updates on the time that he or she had remaining. After the trial court informed David's counsel that he had ninety-eight seconds remaining, David's counsel continued

---

[7]As set forth above, finding of fact 2 states, "It is in the *best interest of the child* that [David Harris] and [Ginger Adams] be retained as joint managing conservators of the child. Further, it is in the best interest of the child that [Ginger Adams] have the exclusive right to make decisions concerning the child's education based upon the *material and substantial change in circumstances of the child and the joint managing conservators since the date of the Final Decree of Divorce entered on February 7, 2008.*" [Emphasis added.] *See* Tex. Fam. Code Ann. § 156.101(a)(1) (setting forth requirements for modification: that modification would be in the best interest of the child and that the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the rendition of the order).

asking questions that fill three and a half pages in the record but did not object to the time limit, nor did he make an offer of proof.

The trial court has "inherent power" to control the disposition of the cases on its docket "with economy of time and effort for itself, for counsel, and for litigants." *Metzger v. Sebek*, 892 S.W.2d 20, 38 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 166 (1936), *cert. denied*, 516 U.S. 868 (1995)). Moreover, assuming that the effect of the time limit was to exclude evidence, error may not be predicated on a ruling excluding evidence unless a party makes known to the court the substance of the evidence by an offer of proof. Tex. R. Evid. 103(a)(2). Because David did not object to the two-and-a-half-hour time limit nor make an offer of proof concerning evidence that was excluded because of the allegedly restrictive time constraints, we have nothing to review. *See Health Enrichment & Longevity Inst., Inc. v. State*, No. 03-03-00578-CV, 2004 WL 1572935, at *5 (Tex. App.—Austin July 15, 2004, no pet.) (mem. op.) (holding that there was nothing to review because appellants did not make an offer of proof concerning evidence excluded due to time constraints). We overrule David's subissue (b).

### E.  David Failed to Object to Admission of Testimony from Diary

In subissue (c), David argues that the trial court abused its discretion by allowing Ginger, "over a proper objection," to "retrieve an unproduced diary, read it, and then put the information into evidence and the record." The record, however, reveals that David did not object when Ginger first asked to review her

24

diary containing her work calendar in order to answer questions from David's counsel about when she had taken A.E.A. on a summer vacation. Ginger referred to the diary, but she did not testify from it. More than one hundred twenty pages later in the record, David objected to Ginger allegedly testifying from the diary. David's objection was untimely. *See* Tex. R. App. P. 33.1(a); *see also* Tex. R. Evid. 103(a)(1). Because David's objection was untimely, we hold that any alleged error is not preserved and that David waived his complaint. *See Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g). We overrule David's subissue (c).

## F. Record Does Not Support David's Claims for Bias and Prejudice

In subissue (d), David argues that the trial court's negative disposition toward him deprived him of a proceeding before a fair and impartial judge. David points to the trial court's statement on the record that David was "irritating" the judge and argues that the trial court's bias directly affected its rulings in allowing Ginger to use unproduced documents at trial, that is, her diary. As we have held above, the trial court did not allow Ginger to testify from an unproduced document; instead, she used the diary to refresh her memory regarding when she took A.E.A. on a summer vacation. Moreover, the record does not support David's claims of judicial bias and prejudice.

The Texas Supreme Court has stated,

> [J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion, and opinions the judge forms during a trial do not necessitate recusal unless they display a deep-seated

25

favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.

*Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001) (quoting *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 1157 (1994)). Furthermore, expressions of impatience, dissatisfaction, annoyance, and even anger do not establish bias or partiality. *Id.* at 240. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune. *Id.* (quoting *Liteky*, 510 U.S. at 556, 114 S. Ct. at 1157).

Here, the record establishes that the trial court instructed David to answer the questions asked of him without adding nonresponsive material to his answers, and when David continued to give nonresponsive answers, the trial court stated its frustration on the record, called for a break in the proceedings, and suggested that David's attorney use the break to talk to David about his responsiveness to questions. We hold that the trial court's statements did not establish bias or prejudice.[8] *See In re D.L.S.*, No. 02-10-00366-CV, 2011 WL 2989830, at *5 (Tex. App.—Fort Worth July 21, 2011, no pet.) (mem. op.) (holding that, on the record presented, trial judge did not demonstrate any bias). We overrule David's subissue (d).

---

[8]Because we hold that the record does not reveal any judicial bias against David, there is no legal basis to support David's request that the case be transferred to another court.

### G.  No Deprivation of Due Process Rights Occurred

In subissue (e), David argues that "a series of decisions by the trial court throughout the proceeding resulted in the trivialization and evisceration of standard due process rights upon which [he] relied and to which he was entitled" and that such decisions caused "an unacceptable risk of erroneous deprivation of [his] right to make decisions regarding the education of the Child."  In essence, David argues that the cumulative effect of the trial court's allegedly erroneous rulings deprived him of due process.  Because we have overruled each of David's due process arguments, holding that no due process violations are apparent in the record, we overrule David's subissue (e) and the entirety of his second issue.

### V.  CONCLUSION

Having overruled each of David's issues and subissues, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL:   GARDNER and WALKER, JJ.; and WILLIAM BRIGHAM (Senior Justice, Retired, Sitting by Assignment).

DELIVERED:  July 18, 2013

27