# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00716-CV

---

**Ernestina Chavarria, Appellant**

**v.**

**Margarito Mike Rodriquez, Appellee**

---

### FROM THE 391ST DISTRICT COURT OF TOM GREEN COUNTY
### NO. D120386AG, THE HONORABLE BRAD GOODWIN, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

In this appeal arising from a petition to modify the parent-child relationship, appellant Ernestina Chavarria challenges the trial court's modification order appointing appellee Margarito Mike Rodriquez joint managing conservator with the exclusive right to designate the primary residence of the parties' child, Stacy.[1]  We affirm.

## BACKGROUND

Chavarria gave birth to Stacy on May 23, 2012.  In 2013, the trial court entered an order establishing the parent-child relationship that established Rodriquez as Stacy's father.  The 2013 order appointed Rodriquez and Chavarria joint managing conservators and named Chavarria joint managing conservator with the exclusive right to designate Stacy's primary residence.  The 2013 order also granted Rodriquez unsupervised possession of Stacy under a

---

[1]  To protect the minor child's privacy, we refer to her using a pseudonym.

standard possession order and stated that the parties agreed to meet halfway between their residences to exchange Stacy on all periods of possession. In addition, the 2013 order required Rodriquez to pay child support and other costs such as for Stacy's health insurance. After the order was entered, Rodriquez married and lived with his wife in San Angelo, Texas, and Chavarria moved several times within Texas.

In 2019, Rodriquez filed a petition to modify the parent-child relationship alleging a material and substantial change of circumstances since the 2013 order and that modification was in Stacy's best interest because Chavarria had purportedly engaged in a history or pattern of child neglect. In regard to modification, Rodriquez requested that he be named sole managing conservator or that the parties be named joint managing conservators, that he be named the conservator with the exclusive right to designate Stacy's primary residence, and that he no longer be required to pay child support to Chavarria. Rodriquez also requested temporary orders, a temporary restraining order, an injunction, and a writ of attachment for possession of Stacy. In support of his requests, Rodriquez attached an affidavit in which he attests that Stacy's present environment may endanger her physical health and significantly impair her emotional development for the following reasons:

- Rodriquez met with Amber Gonzales, of the San Angelo office of Child and Protective Services, on September 5, 2019. During that meeting, Gonzales told Rodriquez that seven-year-old Stacy was found wandering near her home (Chavarria's residence) in La Vernia, Texas on August 22, 2019, seeking help for Chavarria.

- Gonzales also told Rodriquez that Chavarria "had attempted suicide on August 22, 2019, but had a seizure," and Stacy was aware that Chavarria had attempted suicide.

2

- CPS placed Stacy with a family friend while Chavarria was hospitalized because of this incident in August 2019, and did not notify Rodriquez.

- Rodriquez is concerned for Stacy's safety because Stacy has been returned to Chavarria's care. Chavarria did not deliver Stacy for scheduled visitation on September 6, 2019, and Chavarria did not answer her telephone. Chavarria also did not respond to Rodriquez's text messages attempting to arrange visitation for the following weekend.

The trial court granted Rodriquez's request for an attachment and temporary restraining order and set a hearing to determine further temporary orders.

In response to Rodriquez's petition, Chavarria filed an answer and counterpetition to modify the parent-child relationship. Chavarria alleged a material and substantial change of circumstances since the 2013 order and that modification was in Stacy's best interest. Chavarria requested that the trial court appoint her Stacy's sole managing conservator with the exclusive right to designate Stacy's primary residence and deny Rodriquez access to Stacy. Chavarria also requested temporary orders for Stacy's safety and welfare and that the trial court increase the amount Rodriquez was ordered to pay in child support.

The trial court subsequently entered agreed temporary orders directing that Stacy would continue to live with Rodriquez in San Angelo until December 20, 2019, and after this date Stacy would return to live with Chavarria as the custodial parent with the right to designate the primary residence under the conditions of the 2013 order. Under the terms of the agreed temporary orders, Rodriquez's obligation to pay child support to Chavarria was abated until January 1, 2020.

In 2022, the trial court held a final hearing on the competing motions to modify the parent-child relationship, at which Rodriquez and his wife, Olivia Raymond-Rodriquez (Olivia)

testified, along with Chavarria and Stacy's maternal grandmother, Alma Armendariz. After the hearing, the trial court signed an order in a suit to modify the parent-child relationship that appointed Rodriquez and Chavarria as joint managing conservators of Stacy and named Rodriquez as the conservator with the exclusive right to designate Stacy's primary residence and the exclusive right to enroll Stacy in school. In the order, the trial court found that the material allegations in Rodriquez's petition to modify were true and that the requested modification was in Stacy's best interest. The trial court ordered Chavarria to deliver Stacy to Rodriquez on August 18, 2022. The trial court ordered that Rodriquez's child support obligation cease and that Chavarria pay child support to Rodriquez. The order also specified that Chavarria was to have unsupervised possession of Stacy under a standard possession order.

## ANALYSIS

In her sole issue on appeal that we have divided into two sub-issues, Chavarria challenges the trial court's appointment of Rodriquez as joint managing conservator with the exclusive right to designate Stacy's primary residence. Chavarria complains that the trial court abused its discretion in finding a material and substantial change in circumstances sufficient to warrant a modification and in determining that the modification was in Stacy's best interest because the evidence was legally and factually insufficient as to both requirements.[2]

---

[2] Rodriquez did not file a response brief. *See* Tex. R. App. P. 44.1; *Hamilton Metals, Inc. v. Global Metal Servs., Ltd.*, 597 S.W.3d 870, 878 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (instructing that if under applicable law and appellate record appellant has not shown that trial court erred, appellate court may not reverse trial court's ruling even if appellee filed no brief).

**Standard of Review**

We review a trial court's decision to modify conservatorship under an abuse of discretion standard. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *see Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied) (explaining that trial court's decision to modify conservatorship is reviewed under abuse-of-discretion standard). Under this standard, "legal and factual sufficiency of the evidence are not independent grounds for asserting error but are relevant factors in determining whether the trial court abused its discretion." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (citing *Zeifman*, 212 S.W.3d at 587). We first determine "whether the trial court had sufficient information on which to exercise its discretion and, if so, whether the trial court erred in its application of discretion." *Anastasi v. McHorse*, No. 03-23-00274-CV, 2024 WL 968887, at *4 (Tex. App.—Austin Mar. 7, 2024, no pet.) (mem. op.) (quoting *Zeifman*, 212 S.W.3d at 588). We consider only the evidence most favorable to the trial court's ruling and will uphold its judgment on any legal theory supported by the evidence. *Coburn*, 433 S.W.3d at 823 (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990)). A trial court does not abuse its discretion as long as some evidence of a substantive and probative character exists to support the trial court's decision. *Anastasi*, 2024 WL 968887, at *4 (citing *Zeifman*, 212 S.W.3d at 587).

We are further mindful that "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *Russell v. Schriber*, No. 03-22-00731-CV, 2024 WL 4713923, at *2 (Tex. App.—Austin Nov. 8, 2024, no pet. h.) (mem. op.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Therefore, we defer to the trial court's judgment in matters involving factual

5

resolutions and any credibility determinations that may have affected those resolutions. *Id.* (citing *George v. Jeppeson*, 238 S.W.3d 463, 468 (Tex. App.—Houston [1st Dist.] 2007, no pet.)).

**Material and Substantial Change to Support Modification**

Chavarria argues in her first sub-issue that the evidence was legally and factually insufficient to support the trial court's finding that there had been a material and substantial change in circumstances to support modification of the 2013 order establishing conservatorship and possession and access. *See* Tex. Fam. Code § 156.101(a); *Zeifman*, 212 S.W.3d at 589. Her live pleading at the time of the final hearing alleged that, with respect to modification of conservatorship and possession and access, "[t]he circumstances of the child, a conservator, or other party affected by the order to be modified have materially and substantially changed since the date of rendition of the order to be modified." *See* Tex. Fam. Code § 156.101(a). Chavarria and Rodriquez sought different relief in their petitions to modify the parent-child relationship with respect to conservatorship and possession and access; however, their modification claims contained a common essential element. That is, "each required proof of 'change of circumstances.'" *Russell*, 2024 WL 4713923, at *3 (citing *In re A.E.A.*, 406 S.W.3d 404, 410 (Tex. App.—Fort Worth 2013, no pet.). Chavarria's allegation of a change in circumstances in her counterpetition to modify constitutes a judicial admission of that same essential element in Rodriquez's claim for modification of the parent-child relationship even though the parties did not request the same relief. *Id.* (citing *In re A.E.A.*, 406 S.W.3d at 410); *see Obernhoff v. Nelson*, No. 01-17-00816-CV, 2019 WL 4065017, at *20 (Tex. App.—Houston [1st Dist.] Aug. 29, 2019, no pet.) (mem. op.) ("One party's allegation of a change in circumstances of the

6

parties constitutes a judicial admission of the common element of 'change of circumstances' in the other party's similar pleading."). Further, an admission in a trial court pleading constitutes a judicial admission in the case in which the pleading was filed, requires no proof of the admitted fact, and authorizes the introduction of no evidence to the contrary. *Russell*, 2024 WL 4713923, at *3 (citing *Obernhoff*, 2019 WL 4065017, at *20; *In re A.E.A.*, 406 S.W.3d at 410); *see also Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001) (assertion of fact in party's pleading can constitute judicial admission that may substitute for evidence that has "conclusive effect and bars the admitting party from later disputing the admitted fact.").

Chavarria is therefore precluded from asserting on appeal that the evidence is insufficient to support the trial court's finding that there had been a material and substantial change warranting modification of the conservatorship, possession and access provisions of the 2013 order. *Russell*, 2024 WL 4713923, at *3; *see Filla v. Filla*, No. 03-14-00502-CV, 2016 WL 4177236, at *5 (Tex. App.—Austin Aug. 5, 2016, pet. denied) (mem. op.) (explaining that allegation in pleading of material and substantial change constitutes judicial admission of same element in opposing party's claim for modification of prior order, and party that judicially admitted element is barred from challenging sufficiency on appeal); *In re A.E.A.*, 406 S.W.3d at 410–11 (because party judicially admitted change-of-circumstances element of other party's claim in petition to modify, party barred on appeal from challenging sufficiency to support material and substantial change in circumstances). We overrule this portion of Chavarria's issue.

**Best Interest of Child**

In Chavarria's second sub-issue, she argues that the evidence is insufficient to support the trial court's finding that modifying the existing order and naming Rodriquez as the

joint managing conservator with the exclusive right to designate Stacy's primary residence is in Stacy's best interest. Chavarria contends that the evidence shows that Rodriquez's "actions were a hinderance" to Stacy's educational needs, while Chavarria helped Stacy with her schoolwork and Stacy "consistently passed her classes" and was "consistently promoted at each grade level." Chavarria also argues that there is "no evidence" that she is not stable, although she "moved a few times" to better her life.

The primary consideration in determining issues of conservatorship and possession of and access to a child is always a child's best interest. *See* Tex. Fam. Code § 153.002; *In re J.A.J.*, 243 S.W.3d 611, 614 (Tex. 2007). Trial courts generally have wide latitude in determining what is in a child's best interest, *Gillespie*, 644 S.W.2d at 451, and may use a non-exhaustive list of factors to aid in the determination. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). The factors include: (1) the child's desires; (2) the current and future emotional and physical needs of the child; (3) the current and future emotional and physical danger to the child; (4) the parental abilities of the parties seeking custody of the child; (5) whether programs are available to assist those parties to promote the best interest of the child; (6) the plans for the child by the parties seeking custody; (7) the stability of the proposed placement; (8) the parent's acts or omissions that may indicate that the parent-child relationship is not proper; and (9) any excuses for the parent's conduct. *Id.* These factors are not exhaustive, and no single factor is controlling. *See id.* at 371; *M.C. v. Texas Dep't of Fam. & Protective Servs.*, 300 S.W.3d 305, 311 (Tex. App.—El Paso 2009, pet. denied). The factfinder is not required to consider all of the factors, and the presence of a single factor may, in some instances, be adequate to support a best-interest finding. *M.C.*, 300 S.W.3d at 311. With these factors in mind, we review the evidence in the record.

Rodriquez testified at the final hearing that, in September 2019, he learned that Stacy was found wandering near Chavarria's home in La Vernia on August 22, 2019, after Chavarria purportedly attempted suicide. Rodriquez also testified that Stacy was placed with a friend's parent while Chavarria received medical attention for the incident. Rodriquez explained that he filed for custody of Stacy so that Stacy would not have to endure the emotional distress of ensuring that Chavarria is competent and mentally stable.

The 2013 order requires Rodriquez and Chavarria to meet halfway between their residences to exchange custody of Stacy. Rodriquez testified that on more than five occasions since December 2019, he had to drive the entire distance to Chavarria's residence to exchange custody of Stacy because Chavarria either was sick or did not have transportation. Rodriquez stated that Chavarria had a stroke sometime after January 2020 and suffers from a medical condition that causes her to have seizures, which he believes poses a danger to Stacy.

In his testimony, Rodriquez also explained that when Stacy came to live with him in September 2019, she was not up to date on her shots, she needed glasses, and she had cavities and needed teeth pulled. Stacy also needed prescription medication to treat asthma, a condition that Chavarria never mentioned. He stated that since September 2019, he has arranged all of Stacy's medical, dental, and vision appointments. He provides Stacy's medical insurance through the Children's Health Insurance Program (CHIP). Rodriquez does not believe that Stacy takes her asthma medication properly when she is in Chavarria's care because Stacy was hospitalized due to an asthma attack in April 2021.

At the final hearing in August 2022, Rodriquez testified that Stacy had attended five schools since January 2020 and had accrued thirty-six total school absences, twenty-three of which were unexcused. Rodriquez also testified that in 2021 he received a "truancy letter" from

Floresville Elementary School stating that Stacy had twenty-six total absences. He explained that Stacy failed the State of Texas Assessments of Academic Readiness (STAAR) standardized test, and that Stacy performed below average in reading and math in school. According to Rodriquez, Stacy's failing the STAAR test is directly related to her poor school attendance.

Rodriquez testified that Stacy was currently in the fourth grade and that she has learning disabilities in reading and math. He explained that Wall Elementary, the school that Stacy attended when she lived with him, was catching Stacy up to her grade level in reading and math skills and providing Stacy with the help that she needed. Rodriquez owns a home in the Wall Independent School District and has worked for the same employer for eight years. He testified that he ensures that Stacy completes her homework and that Stacy does not complete her homework when she is with Chavarria.

The trial court also heard testimony from Rodriquez's wife, Olivia, who explained that she and Rodriquez had custody of Stacy from September through December 2019. Olivia stated that she and Rodriquez scheduled an Admission, Review, and Dismissal (ARD) committee meeting with Wall Elementary School to assess Stacy's academic progress within three days of Stacy coming to live with their family. Olivia stated that after they got Stacy into the appropriate reading and math programs, Stacy loved school. Olivia stated that Stacy was on a better track to finish her education when she was enrolled in Wall Independent School District because Wall Elementary is a small school that can provide Stacy with individual attention. Olivia stated that she and Rodriquez make better use of the tools that the school offers to help Stacy succeed and address her learning disabilities than does Chavarria. Olivia testified that a child needs routine, consistency, and scheduling, and that moving frequently handicaps a child's education.

Finally, Chavarria testified at the hearing that, in August 2019, Stacy went to a neighbor's home to get help after Chavarria had a seizure, and Chavarria was hospitalized after the incident. Chavarria also stated that she had a stroke in March 2021, and denied being hospitalized for suicidal ideations.

Chavarria testified that she did not work and was not looking for work because she was filing for Social Security disability. She explained that her disability is fibromyalgia caused by a car accident for which she was not hospitalized, and also slipped discs in her back. She was last employed for approximately a year and a half before trial. Chavarria testified that she could not meet Rodriquez halfway between their residences to exchange Stacy, as the trial court ordered, because she had a "neck injection," she suffered a "mini stroke," and "had vertigo." Chavarria also testified that she previously lived in a home that was mold-infested.

Chavarria testified that she is in a stable position because she has lived at her mother's house in Cedar Hill, Texas, for the last five months. Chavarria testified that Stacy is in a stable position as well, although Stacy has been enrolled in four different schools in the last two years and Chavarria lived at her prior two addresses for nearly two months each. Chavarria also testified that Stacy "did excellent" in school and got good grades, and that it has not affected Stacy to move from residence to residence and school to school within the same year. Chavarria does not believe that Stacy is delayed academically each time Chavarria moves and Stacy changes schools. Chavarria explained that, although Stacy has learning disabilities, she only needs one Admission, Review, and Dismissal (ARD) committee meeting every three years, even if she changed schools.

In sum, the trial court heard evidence from both parties about their abilities to communicate, care for Stacy, and meet her educational, medical, and emotional needs. In

11

evaluating whether the trial court abused its discretion, we are mindful that we defer to the trial court's credibility determinations and do not substitute our judgment for that of the court. *Russell*, 2024 WL 4713923, at *2; *see Silverman v. Johnson*, No. 03-08-00271-CV, 2009 WL 2902716, at *9 (Tex. App.—Austin Aug. 26, 2009, no pet.) (mem. op.) (observing that it is factfinder's role to resolve evidentiary conflicts and determine weight and credibility of witnesses and that factfinder's role "cannot be overstated" in custody disputes which are intensely fact driven). Having reviewed the evidence under the appropriate standards, we conclude that the record contains sufficient competent evidence to support the trial court's conclusion that it is in Stacy's best interest to give Rodriquez, as joint managing conservator, the right to determine Stacy's primary residence and, on this record, we cannot conclude that the trial court abused its discretion in doing so. We overrule Chavarria's second sub-issue.

## CONCLUSION

We affirm the trial court's order.

_____

Maggie Ellis, Justice

Before Justices Triana, Crump, and Ellis

Affirmed

Filed: January 31, 2025