**AFFIRMED; Opinion Filed December 1, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00723-CV

### IN THE INTEREST OF M.N.M., A CHILD

**On Appeal from the County Court At Law
Kaufman County, Texas
Trial Court Cause No. 87539-CC**

# MEMORANDUM OPINION
Before Justices Lang, Myers, and Brown
Opinion by Justice Lang

Appellant S.C. ("Mother") [1] appeals the trial court's order terminating her parental rights respecting her daughter, M.N.M., following a bench trial. Proceeding pro se in this Court, Mother contends in three issues that the trial court erred by (1) not trying the case before a jury; (2) "failing to grant a mistrial when my attorney asked for it because the Judge tried to cut off my attorney's cross-examination of witnesses and expressed a bias against me intimidating my lawyer during the trial which deprived me of the right to have my lawyer present my case during trial"; and (3) "terminating my parental rights in the face of the evidence that I have a disability as described in the Americans With Disabilities Act and because that [sic] the Texas Department of Family and Protective Services, despite knowing of my disability, failed to take my disability into consideration when working with me on doing my services."

---

[1] We use initials to identify appellant and her daughter in this opinion. *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2014); TEX. R. APP. P. 9.8(b).

We decide Mother's three issues against her. The trial court's order is affirmed. Because the law to be applied in this case is well settled, we issue this memorandum opinion. *See* TEX. R. APP. P. 47.2, 47.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This action was filed by the Texas Department of Family and Protective Services ("DPS") on January 28, 2013.[2] DPS sought immediate temporary conservatorship of M.N.M. pursuant to Chapter 262 of the Texas Family Code. *See* TEX. FAM. CODE ANN. §§ 262.001–262.205 (West 2014). Additionally, DPS's original petition stated in part that "[i]f reunification with [Mother] cannot be achieved," DPS requested permanent conservatorship of M.N.M. and termination of Mother's parental rights based on (1) the best interest of M.N.M. and (2) "one or more" of the acts and omissions set out in Texas Family Code section 161.001(1). *Id.* §161.001. Attached to the original petition was an "Affidavit in Support of Removal" containing statements by an "authorized representative" of DPS.

In an emergency order dated the same date this case was filed, the trial court (1) named DPS temporary sole managing conservator of M.N.M. pursuant to Chapter 262, (2) appointed an attorney ad litem and guardian ad litem to represent M.N.M., and (3) scheduled a "full adversary hearing under [family code] § 262.201" on February 7, 2013.

On February 7, 2013, Mother (1) filed an "Original Answer" in which she asserted a general denial and (2) appeared at the full adversary hearing in person and through counsel. Following that hearing, the trial court issued an order in which it listed required actions of Mother "necessary to obtain the return of the child" and stated "failure to fully comply with these orders may result in the restriction or termination of parental rights." The required actions

---

[2] In its original petition, DPS named Mother and M.N.M's alleged father as "Parties to be Served." M.N.M.'s alleged father signed a voluntary relinquishment of his parental rights prior to the trial court's order at issue and is not a party to this appeal.

included, in part, complying with "each requirement set out in [DPS's] original, or any amended, service plan during the pendency of this suit." Additionally, the trial court signed a February 7, 2013 "Scheduling/Discovery Order" in which it stated in part that any jury request by a party must be received "no less than sixty days prior to the date set for trial."

In an April 4, 2013 order, the trial court specifically approved a service plan filed by DPS ("the service plan") and made it part of that order. The service plan listed requirements to be completed by Mother, including (1) undergoing drug testing, (2) a "substance abuse assessment," (3) a "psychological evaluation," and (4) participating in counseling and parenting courses.

On April 12, 2013, DPS filed a "first amended petition" in which it restated its requests for permanent conservatorship and termination of Mother's parental rights "[i]f reunification with [Mother] cannot be achieved." The grounds for the requested termination of parental rights included, in part, failure to "comply with the provisions of a court order that specifically established the actions necessary for the mother to obtain the return of the child who has been in the permanent or temporary managing conservatorship of [DPS] for not less than nine months as a result of the child's removal from the parent under Chapter 262." *See* TEX. FAM. CODE ANN. § 161.001(1)(O). The trial court continued to hold hearings every few months respecting review of the conservatorship appointment, placement of M.N.M., and Mother's "compliance with temporary orders and the service plan."

In an order dated November 7, 2013, the trial court stated in part that this case "is hereby set for trial on December 19, 2013." On November 21, 2013, Mother filed another "Original Answer." In that answer, Mother stated in part that she "requests a jury trial and pays the jury fee of $ 30.00." The trial court signed a December 19, 2013 order in which it stated in part,

> With regards to [Mother's] request for a Jury Trial, the Court sustains [DPS's] Objection based upon the Scheduling/Discovery Order entered by the Court in this matter February 7, 2013 . . . . Based upon the Scheduling/Discovery Order,

–3–

the Court does find [Mother's] request should have been submitted no later than October 20, 2013, and is therefore untimely . . . .

The record shows the trial date was subsequently reset several times, due in part to Mother retaining new defense counsel in December 2013. On December 31, 2013, Mother's new defense counsel filed a motion for continuance requesting, in part, "a re-setting of the nonjury trial set for 9:00 p.m. [sic] on January 6, 2013 [sic]." A hearing on that motion for continuance was held on January 6, 2014. At that hearing, the trial court stated to counsel for DPS, "[W]e are here before the Court today; actually today on a trial before the Court. However, [new defense counsel] since filed a request for a jury trial; is that your understand [sic]?" Counsel for DPS stated in part, "I am not sure—I can't recall if [new defense counsel] requested a jury trial or not." The trial court granted Mother's motion for continuance and stated in part, "The actual reason I am extending this case or continuing this case is [new defense counsel's] late arrival into this case, number one, and at the same time requesting a jury trial on top of that." Then, counsel for DPS stated she had been told by a court administrator that the date of February 18, 2014, was available for a "trial before the Court." Trial was reset for that date with no objection by Mother or her counsel.

A seven-day bench trial commenced on April 28, 2014. At the start of trial, defense counsel stated "I want to reurge my Motion that I made at the last pre-trial hearing we had where I requested that this matter be tried to a jury, that the requisite period of time had expired between the time the fee was paid and the time [of] the trial and therefore, I do not want to waive that issue." The trial court stated "[t]hat's overruled."

During trial, Mother testified in part that she has been diagnosed with depression and "ADHD" and "misdiagnosed" as bipolar. She stated she is not currently taking medication for any of those conditions. On cross-examination, Mother testified in part,

–4–

Q. Now, you understand that ADHD is inattentive [sic] to a project once you start it and start, stop, start stop, that kind of thing?

A. I wouldn't agree with that, no.

Q. How do you perceive it?

A. First, I believe that it depends on the individual on how they react to it. I am not a medical professional, but I do believe that it depends on them. . . . . Where my symptoms of ADHD is I'm all over the place, more or less. I'll start like a garden outside and it becomes a huge garden, as long as—along with out front doing the flower beds and all of that and then back inside to do the remodeling and I have multiple projects going on at one time, but they all are completed.

Anna Marie Roberts Davis, a clinical psychologist, testified she conducted a psychological evaluation of Mother more than year earlier. Davis testified Mother (1) has "a history of" ADHD and depression and (2) appeared to her to be bipolar.

Julie Briscoe, a nurse practitioner, stated she treated Mother during 2013. Briscoe testified that at the time she treated Mother, Mother told her she was on medication for ADHD that had been prescribed by another health care provider. According to Briscoe, Mother told her the medication was not helping her and she was not having symptoms of ADHD. Briscoe stated Mother requested to stop the ADHD medication and start medication for anxiety and depression. Briscoe testified she did not diagnose Mother with ADHD. Finally, Briscoe stated she believed Mother had depression at that time.

Pamela Martinez Tovar testified she is employed by DPS and has been "involved with this case" since February 7, 2013. Tovar testified she met with Mother shortly after that date to "do a social history," which covers, among other things, "drug use" and "any chronic health issues." According to Tovar, Mother "reported a history of mental health illness."

Tovar testified she prepared the service plan in this case. She stated that when she prepares a service plan, she asks the parent if they understand what services DPS is asking the parent to complete and "if there are any other services that the department could provide for them that we're not already offering." According to Tovar, (1) she reviewed with Mother the

service plan and the "legal timeline" respecting this case and (2) Mother signed a copy of the service plan. Tovar stated that when she reviews the legal timeline of a case with a client, she asks the client if he or she understands that the State of Texas allows DPS one year to "find the child permanency." According to Tovar, Mother "did appear sort of frantic to know about the legal timeline that the State would have a year to work on reuniting [M.N.M.] with her."

Tovar testified she memorialized some of her conversations with Mother in written communications and sent those written communications to Mother "to insure she understood what I just told her" and "remind" Mother of requirements she had not yet fulfilled. Several of those written communications were admitted into evidence. Tovar stated Mother did not complete the requirements in the service plan. Further, Tovar testified in part on direct exam as follows:

> Q. Would it surprise you if [Mother's] coming forward today or sometime in this process of this trial and offers completion of or continuing services, at this point and time?
>
> A. That would surprise me, yes.
>
> Q. Why?
>
> A. Because, I have been requesting documentation from her, asking if she's continuing service or if I needed to set something up again, various times.
>
> Q. At any point and time, did she indicate to you that she was continuing to work through the service plan?
>
> A. No.
>
> Q. Is it something if a parent or a client, however, we shall refer to them, comes to you and says, I am still working services, I need more time, is that something that the department takes into consideration?
>
> A. Yes, definitely, specifically, because [Mother] has used up all of her allocated counseling units, so I could have just started those over again.
>
> On cross-examination, Tovar testified in part as follows:

Q. And, you also, through the course of your management of this case learned that [Mother] had ADHD?

A. I did.
. . . .
Q. Okay. And, in your continuing education or your undergraduate training or your academy training, were you ever informed as to whether or not the Americans with Disabilities Act in Department of Protective Family Services in the discharge of their duties with their cases? [sic]

A. I don't have knowledge of that.

Q. Okay. So, you don't know whether or not someone who presents with a disability is to be treated differently from someone who presents without a disability, do you?

A. I don't.
. . . .
Q. Do you know of any other health conditions that [Mother] experienced?

A. I know of some mental health conditions that she was diagnosed with.

Q. Okay. And, those mental health issues were?

A. She was diagnosed as being Bi-polar.
. . . .
Q. Okay. Now, we've touched on various different aspects of [Mother's] ability to cooperate or your perception of her ability to cooperate and you perceived that she wasn't cooperating; is that the sum and substance of what I get from what you were saying?

A. She didn't cooperate with services.

Q. Okay. And, you had available to you or you were placed on notice about the fact that she had potentially a disability, correct?

A. During my case, not at the beginning.

Q. Okay. At any point and time during your case, now you are a State Agent— member of a representative of the State Agency, correct?

A. Yes.

Q. And, as a member of that State Agency you had a duty to accommodate her; didn't you?

A. I don't know that I did.

Q. Okay. You've never been informed of that obligation?

A. No.

Q. Just to make certain that I can leave the subject. You've never been informed of the department's responsibilities under the American With Disabilities Act of 1995?

A. I don't recall being trained on there being accommodations that I had to make as a caseworker.

During cross-examination of Tovar by defense counsel, the trial judge asked defense counsel to approach the bench alone. A discussion off the record followed and the trial then resumed. Shortly thereafter, in chambers outside of the courtroom, defense counsel stated to the trial judge on the record as follows:

> I have been admonished by the Judge as it applies to my cross examination and I understand that the Court has become impatient with what I am doing but because I am trying to demonstrate the difference in the treatment of the child at the hands of the mother in contrast to the treatment of the child while in the custody of the Department of Family Services, I feel like now abridges any of my client's right to an opportunity to have a fair and impartial decision because I have offended the Judge and I don't think he is happy—is the best way to put it and I don't want to compromise my client's ability to have a fair trial, consequently because of my activities, and so, I have asked permission to withdraw from the case.

The trial court denied defense counsel's request to withdraw from the case. The parties returned to the courtroom and the trial resumed.

> On the next day of trial, defense counsel stated

> Comes now the Defendant before the opening of the evidence—reopening of the evidence moves Court for mistrial based upon the events that occurred on Wednesday afternoon wherein the counsel for the Defendant felt that his right to cross examine a witness had been abridged. Therefore, when witness was taken on further Direct or Cross, depending the prospective by the Ad Litem, counsel did not feel that it was appropriate to make objections that would otherwise have been interposed to the evidence that was offered and therefore, error has been allowed to become a part of the record and because of the rights of the Defendant have been prejudice to the extent that the evidence that was offered and the Cross Examination, which may now be permissible, I am concerned that the record may contain flaws and we would move for mistrial on that bases. [sic]

The trial court denied the motion for mistrial. Then, the parties resumed their examination of Tovar. Defense counsel stated in part to the trial court, "As a matter of clarification, Judge, based on that earlier motion that I made will I be permitted to continue to Cross Examination this witness [sic] in the areas that I have omitted because of my perception to the Court's ruling." The trial court replied, "Yes, sir."

During closing arguments, defense counsel stated in part

Ms. Tovar, likewise, told us that they have no training in the Americans With Disability Act. Well, the Americans With Disability Act does apply to a State Agency. Specifically, applies to a State Agency. And, in what sense does it apply? It applies when you meet someone who has a disability. ADHD is a recognized disability. Bipolar disorder is a recognized disability and depression is a recognized disability. And, if you have an obligation under Federal Law to render accommodation and you failed to do. [sic] So, you've exposed your state agency, although, not in this form [sic], but in Federal Court to potential penalty that could run up to a hundred million dollars, if that's what they like to do. They may have their opportunity to do so, to face that evidence in the future. But, for purposes for our hearing, it shows a short coming, a serious short coming in the way that they undertook their obligations.

The attorney ad litem stated in part during closing arguments

[Counsel for Mother] focuses on the American Disability Act [sic] and how the Department has a duty to work with people who have a disability. I don't know if [Mother] has a disability or not, one minute she's Bipolar, the next minute she's not Bipolar. One minute she's got ADHD, the next minute she doesn't.

Finally, counsel for DPS stated in part during closing arguments

I will refer the Court to failure to comply with provisions of a Court Order put in place to allow those families unification, that's [family code section 161.001(1)(O)]. Your Honor, the law provides no provision for excuses or for partial compliance with this statute and that's all you have evidence wise is excuses and partial compliance with the service plan.

Following trial, by order dated May 15, 2014, the trial court terminated Mother's parental rights to M.N.M. That order stated in part, "A jury was waived, and all questions of fact and of law were submitted to the Court."

–9–

On June 4, 2014, Mother filed (1) a request for findings of fact and conclusions of law, (2) a notice of appeal,[3] and (3) a "Motion for Entry of Order of Judgment Nunc Pro Tunc." In her motion for judgment nunc pro tunc, Mother argued (1) she did not waive her right to a jury trial and therefore the statement of waiver in the trial court's termination order was in error[4] and (2) the trial court's "findings" in the termination order respecting particular elements of one of the two specific grounds for termination listed in the order were "not supported by the record."

After a hearing on Mother's motion for judgment nunc pro tunc, the trial court signed a July 1, 2014 "Nunc Pro Tunc Order of Termination." In that order, the trial court stated in part, "A jury request was denied by the court on December 19, 2013, based on the finding that [Mother] waived her right to jury trial by failing to timely request same." Additionally, the trial court's order stated in part

> 6.1. The Court finds by clear and convincing evidence that termination of the parent-child relationship between [Mother] and the child the subject of this suit is in the child's best interest.
>
> 6.2. Further, the Court finds by clear and convincing evidence that [Mother] has:
>
>> 6.2.1. constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services or an authorized agency for not less than six months and: (1) the Department or authorized agency has made reasonable efforts to return the child to the mother; (2) the mother has not regularly visited or maintained significant contact with the child; and (3) the mother has demonstrated an inability to provide the child with a safe environment, pursuant to § 161.001(1)(N), Texas Family Code;

---

[3] This is an accelerated appeal pursuant to Texas Rule of Appellate Procedure 28.4(a). *See* TEX. R. APP. P. 28.4(a); *see also* TEX. FAM. CODE ANN. § 263.405. Further, recent amendments to the rules of judicial administration require disposition of appeals from judgments terminating parental rights, so far as reasonably possible, within 180 days of the date the notice of appeal is filed. *See* TEX. R. JUD. ADMIN. 6.2(a), available at http://www.supreme.courts.state.tx.us/MiscDocket/12/12903200.pdf.

[4] Specifically, the portion of Mother's motion for entry of judgment nunc pro tunc respecting a jury trial stated as follows:

> [Mother] did not waive empanelment of a jury. [Mother] filed a jury request but such was deemed out of time and was overruled. The record of this action will reflect that the time between the filing and requesting of a jury was in excess of the time required by Rule 216 of the Texas Rules of Civil Procedure. In the first re-urging of the Jury Request at pre-trial, [Mother] complained of the Associate Judge's Scheduling/Discovery Order filed February 7, 2013, wherein it modified Rule 216 of the Texas Rules of Civil Procedure in violation of Texas Rule of Civil Procedure 3a(2) which states, in pertinent part: "no time period provided by these rules may be altered by local rules." The record reflects more than sixty days expired between the filing of the motion and commencement of trial. [Mother] re-urged her request for a jury trial at the commencement of trial.

6.2.2. failed to comply with the provisions of a court order that specifically established the actions necessary for the mother to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child, pursuant to § 161.001(1)(O), Texas Family Code;

6.3. **IT IS THEREFORE ORDERED** that the parent-child relationship between [Mother] and the child the subject of this suit is terminated.

(emphasis original). No findings of fact or conclusions of law were filed by the trial court.

## II. MOTHER'S ISSUES

### A. Jury Request

#### 1. Standard of Review

We review the trial court's denial of a party's demand for a jury trial under an abuse of discretion standard. *In re J.N.F.*, 116 S.W.3d 426, 430 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (citing *Mercedes–Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996)). This standard requires a review of the entire record. *Id.* The test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles. *Id.*

#### 2. Applicable Law

A party to a suit under the family code has a right to demand a jury trial in proceedings that do not include adoption or the adjudication of parentage. TEX. FAM. CODE ANN. § 105.002. "In order to maintain that request, it is required that the party file a written request with the clerk of the court in a reasonable amount of time before the trial date, but not less than thirty days in advance, and a jury fee must also be paid to the clerk of the court within the same time frame." *Stallworth v. Stallworth*, 201 S.W.3d 338, 346 (Tex. App.—Dallas 2006, no pet.) (citing TEX. R. CIV. P. 216; *Huddle v. Huddle*, 696 S.W.2d 895, 895 (Tex. 1985)); *see also* TEX. CONST. art. V, §10 (no jury shall be empaneled in any civil case unless jury fee is paid or legislature otherwise

provides); TEX. FAM. CODE ANN. § 110.001 (except as otherwise provided, "fees in a matter covered by this title shall be as in civil cases generally"). "The clerk shall promptly enter a notation of the payment of such fee upon the court's docket sheet." TEX. R. CIV. P. 216(b). A party who is unable to afford the jury fee must file an affidavit to that effect within the time for making such payment. *See* TEX. R. CIV. P. 217.

### 3. Application of Law to Facts

In her first issue, Mother contends the trial court committed reversible error by not granting her a jury trial. Specifically, Mother asserts in part that the trial court "illegally changed Texas Rules of Civil Procedure 216 which gives me 30 days before the beginning of a trial to request a jury trial when [the judge] ignored Texas Rule of Civil Procedure 3a(2) which says that no one can change the times set out in the Texas Rules of Civil Procedure." Texas Rule of Civil Procedure 3a(2) states "no time period provided by these rules may be altered by local rules." TEX. R. CIV. P. 3a(2). Mother stated in her motion for judgment nunc pro tunc described above that this argument was asserted in the trial court "at pre-trial."[5] Even assuming without deciding that this argument was preserved for appellate review, Mother does not cite, and the record does not show, any "local rule" that altered the time period in rule 216. *See id.* Therefore, we disagree with Mother's contention that the trial court "illegally changed" a rule of civil procedure in violation of rule 3a(2).

Additionally, Mother states in her brief on appeal, "My request for a jury trial was filed in November 21, 2013, and the Judge trial started a hundred and fifty-eight days later on April 28, 2014." We construe Mother's appellate argument to assert that her jury demand became timely when the trial date was reset. *See* TEX. R. APP. P. 38.1(f) (statement of appellant's issue will be

---

[5] The record on appeal does not show this argument was asserted by Mother in the trial court prior to her motion for judgment nunc pro tunc.

treated as covering every subsidiary question that is fairly included); *see also Halsell v. Dehoyos*, 810 S.W.2d 371, 371 (Tex. 1991) (untimely jury demand became timely when trial court reset case and demand was timely as to new trial date).

DPS asserts in part that the trial court did not deprive Mother of any right to jury trial because (1) Mother "affirmatively waived a jury trial at the hearing on her motion for continuance on January 6, 2014" and (2) her "renewal of her request for jury trial" on the first day of trial was "untimely."

Even assuming without deciding that Mother's written demand for a jury trial became timely after the trial date was reset, a party requesting a jury in a civil case must also timely pay the required jury fee. *See* TEX. CONST. art. V, §10; *Stallworth*, 201 S.W.3d at 346 ("In order to maintain that [jury] request, it is required that the party file a written request with the clerk of the court in a reasonable amount of time before the trial date . . . and a jury fee must also be paid to the clerk of the court within the same time frame."); TEX. R. APP. P. 216. The record shows (1) Mother asserted in her answer filed in the trial court that she "requests a jury trial and pays the jury fee of $ 30.00" and (2) Mother's counsel asserted on the first day of trial that "the requisite period of time had expired between the time the fee was paid and the time [of] the trial." Additionally, Mother asserts in her appellate brief that her attorney "paid the charges for a jury trial." However, Mother does not cite to the record respecting payment of the jury fee. *See* TEX. R. APP. P. 38.1(i). Further, there is no notation of payment of a jury fee on the docket sheet. Any jury fee paid is required to be noted on the docket sheet by rule 216(b). *See* TEX. R. CIV. P. 216(b) ( "The clerk shall promptly enter a notation of the payment of such fee upon the court's docket sheet."). Additionally, there is no documentation or entry in the bill of costs showing

payment of the charges,[6] nor is there other indication in the record that a jury fee was paid or that Mother was excused from paying such fee. *See* TEX. R. CIV. P. 217 (jury fee not required when party files affidavit of inability to pay fee); *In re Marriage of Crosby*, 322 S.W.3d 354, 355–56 (Tex. App.—El Paso 2010, no pet.) (concluding appellant was not entitled to jury trial because "[a]lthough the petition recites that a jury fee had been tendered with the answer, the case summary does not reflect that any such payment was received by the District Clerk"); *Romero v. Zapien*, No. 13-07-00758-CV, 2010 WL 2543897, at *14 (Tex. App.—Corpus Christi June 24, 2010, pet. denied) (concluding trial court was not required to hold jury trial where there was no evidence or documentation that jury fee was paid), *disapproved on other grounds by Iliff v. Iliff*, 339 S.W.3d 74, 78 n.2 (Tex. 2011); *cf. Norris v. Norris*, No. 05–01–01502–CV, 2002 WL 1742397, at *3 (Tex. App.—Dallas July 29, 2002, no pet.) (not designated for publication) (no error in not holding jury trial where there was "no evidence" appellant requested jury and paid jury fee). "An appellant has the burden to bring forth sufficient record and authority to support reversible error." *Rosenblatt v. City of Houston*, 31 S.W.3d 399, 407 (Tex. App.—Corpus Christi 2000, pet. denied); *see* TEX. R. APP. P. 44.1 ("No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of . . . probably cause the rendition of an improper judgment . . . ."). On this record, we conclude Mother has not demonstrated reversible error respecting denial of a jury trial.

We decide against Mother on her first issue.

---

[6] The Texas Supreme Court has stated that "'[c]osts,' when used in legal proceedings, refer not just to any expense, but to those paid to courts or their officers." *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 175 (Tex. 2013); *see* BLACK'S LAW DICTIONARY 398 (9th ed. 2009) (defining "costs" as, *inter alia*, "[t]he charges or fees taxed by the court, such as filing fees, jury fees, courthouse fees, and reporter fees"). Although the "bill of costs" in the appellate record in this case is not itemized, it shows total payments of "$0.00" respecting the amounts charged in this case.

### B. Denial of Motion for Mistrial

In her second issue, Mother contends the trial court erred by not granting her motion for mistrial "because the [trial judge] tried to cut off my attorney's cross-examination of witnesses and expressed a bias against me intimidating my lawyer during the trial which deprived me of the right to have my lawyer present my case during trial." We construe Mother's issue to assert complaints of "bias" as to the trial judge and ineffective assistance of counsel.

In support of her second issue, Mother cites (1) a portion of the trial record in which the trial court sustained an objection by DPS on the ground of relevance during her counsel's cross-examination of a former DPS investigator and (2) a subsequent portion of the record in which an objection by DPS to her counsel's "form of questioning" as to the same former investigator was sustained. Additionally, Mother cites the portions of the record described above in which, during cross-examination of Tovar, defense counsel was asked to approach the bench alone, made a request to withdraw from the case, and moved for mistrial. According to Mother's appellate brief,

> [The trial judge] denied my attorney's motion for a mistrial after intimidating my attorney. [The trial judge's] failure to grant the motion for a new trial [sic] was an abuse of discretion because he injected himself into how my attorney was representing me and when he did that he showed that he favored the District Attorney who was representing [DPS], and the Guardian Ad-Litem who was aligned with the District Attorney's interest in terminating my parental rights. I was denied my right to a fair and impartial trial because [the trial judge] changed how I was being represented.

Further, Mother contends

> When [the trial judge] called my attorney up to the bench and lectured him, he affected my attorney's willingness to oppose the termination of my parental rights. I was denied effective assistance of counsel after [the trial judge] lectured my attorney.

DPS asserts Mother did not preserve any error for review because "whatever was said by the trial court to counsel is not included in this record, and [Mother] did not request a bill of

exception or otherwise make the comments part of the record." Additionally, DPS argues, "the record reflects that counsel did effectively represent his client and in fact continued the cross examination that he claimed was stifled by the [trial] court."

1. Standard of Review and Applicable Law

We review a trial court's denial of a mistrial under an abuse of discretion standard. *See In re J.A.*, 109 S.W.3d 869, 874 (Tex. App.—Dallas 2003, pet. denied); *Lewis v. United Parcel Serv., Inc.*, 175 S.W.3d 811, 815 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

The Texas Supreme Court has stated

> [J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion, and opinions the judge forms during a trial do not necessitate recusal unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.

*Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Further, expressions of impatience, dissatisfaction, annoyance, and even anger do not establish bias or partiality. *Id*. "'A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.'" *Id*. (quoting *Liteky*, 510 U.S. at 556); *accord In re A.E.A.*, 406 S.W.3d 404, 420 (Tex. App.—Fort Worth 2013, no pet.).

"[T]he statutory right to counsel in parental-rights termination cases embodies the right to effective counsel." *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003). In evaluating claims of ineffective assistance of counsel in civil parental-rights termination cases, we begin with the standard set forth by the United States Supreme Court for criminal cases in *Strickland v. Washington*. *Id*. at 544–45 (citing *Strickland*, 466 U.S. 668, 687 (1984)). Under the *Strickland* standard, a parent must show both that (1) his attorney's performance was deficient and fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced his

–16–

defense. *Id.* at 545. To show prejudice, the parent "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

### 2. Application of Law to Facts

In *In re A.E.A.*, a father argued that the trial court's negative disposition toward him deprived him of a proceeding before a fair and impartial judge. *See* 406 S.W.3d at 420. Specifically, the record in that case established that the trial court instructed the father to answer the questions asked of him without adding nonresponsive material to his answers. *Id.* When the father continued to give nonresponsive answers, the trial court stated its frustration on the record, called for a break in the proceedings, and suggested that the father's attorney use the break to talk to the father about his responsiveness to questions. *Id.* The father pointed to the trial court's statement on the record that the father was "irritating" the judge and argued that the trial court's bias directly affected its rulings. *Id.* The court of appeals applied the law described above and concluded the record did not support the father's claims of judicial bias and prejudice. *Id.* (citing *Dow Chem. Co.*, 46 S.W.3d at 240).

In the case before us, Mother does not explain, and the record does not show, how the sustaining of the two objections cited by her displayed "a deep-seated favoritism or antagonism." *See Dow Chem. Co.*, 46 S.W.3d at 240. Further, the record does not show what the trial judge said to defense counsel when defense counsel was asked to approach the bench alone. *Cf. Espinoza v. State*, No. 04–13–00462–CR, 2014 WL 1319353 (Tex. App.—San Antonio Apr. 2, 2014, no pet.) (mem. op., not designated for publication) ("the record in this case does not establish the nature of the outbursts upon which Espinoza bases his complaint; therefore, the record cannot establish a clear showing of bias by the trial court's failure to grant a mistrial

based on these outbursts"). Additionally, the record shows that subsequent to the trial court's denial of Mother's motion for mistrial, (1) defense counsel asked the trial court, "will I be permitted to continue to Cross Examination this witness [sic] in the areas that I have omitted because of my perception to the Court's ruling" and (2) the trial court replied, "Yes, sir." We conclude the record in this case does not support Mother's claim of judicial bias. *See Dow Chem. Co.*, 46 S.W.3d at 240; *In re A.E.A.*, 406 S.W.3d at 420.

As to Mother's claim of ineffective assistance of counsel, Mother does not cite the applicable test described in *Strickland. See In re M.S.*, 115 S.W.3d at 544–45. Further, even assuming without deciding that Mother's argument can be construed to assert that her attorney's performance was deficient and fell below an objective standard of reasonableness, she does not address or demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694. Accordingly, on this record, we conclude Mother has not met her burden to show ineffective assistance of counsel. *See id.*; *In re M.S.*, 115 S.W.3d at 544.

Mother's second issue is decided against her.

### C. Alleged Disability

In her third issue, Mother contends the trial judge "committed an error by terminating my parental rights in the face of the evidence that I have a disability as described in the Americans With Disabilities Act and because that [sic] the Texas Department of Family and Protective Services, despite knowing of my disability, failed to take my disability into consideration when working with me on doing my services."[7] In her "summary of the argument" section of her appellate brief, Mother states she is "complaining about the termination of my parental rights

---

[7] In support of her argument respecting her third issue, Mother cites "42 U.S.C. section 12102(2)." *See* 42 U.S.C.A. § 12102(2) (West 2014). Section 12102 of the Americans With Disabilities Act is titled "Definition of Disability," and the subsection cited by Mother defines "major life activities" as that term is used in the definition of "disability." *Id.*

because [DPS] knew that I had disabilities which affected my ability to concentrate and complete the services they asked me to do." Further, in the body of her brief, she asserts in part (1) "[m]y medical conditions were ignored and I was discriminated against in [DPS's] handling of my case" and (2) "[t]he sum total of Ms. Tovar's handling of my services proves that there was a complete lack of appreciation of my problems, that I got no help from [DPS], and that I was not offered the fair opportunity to comply with the court's orders or the service plan." Additionally, in the last paragraph of her argument, Mother states

> 2. <u>Clear and Convincing Evidence</u>. In spite of the testimony of Ms. Tovar which contradicts itself in numerous places, the Judge committed an error by terminating my parental rights in the face of the evidence that I have a disability as described in the American's [sic] With Disabilities Act and because [DPS] failed to take my disability into consideration when working with me on doing my services. The evidence, taken as a whole, clearly demonstrates that I tried to work services, that my case worker, and the various court-ordered service providers failed to ensure that my disabilities were taken into account in the handling of my case.

(emphasis original). Finally, in her prayer in her appellate brief, Mother asserts in part that the trial judge "abused his discretion in failing to find that [DPS] failed to prove by clear and convincing evidence that in spite of my disabilities, I understood and appreciated the significance of the court order he found that I didn't comply with, and failed and refused to take into consideration my disability in denying the termination of my parental rights [sic] to my daughter."

DPS responds Mother "failed to preserve this claim of error for review by failing to point out any place in this record where she presented her complaint to the trial court." Further, DPS argues, "even assuming [Mother] actually has ADHD, nothing in this record demonstrates that the trial court abused its discretion in terminating her parental rights."

1. Applicable Law

Family code section 161.001 provides two prerequisites for termination of parental rights. *See* TEX. FAM. CODE ANN. § 161.001. First, the proponent must establish one or more of the

recognized grounds for termination. *Id*. § 161.001(1). Second, termination must be in the child's best interest. *Id*. § 161.001(2). Because termination of parental rights involves fundamental constitutional rights, evidence justifying termination must be clear and convincing. *See, e.g., In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2014); *In re S.M.R.*, 434 S.W.3d 576, 580 (Tex. 2014).

Several Texas courts of appeals have concluded that a complaint respecting DPS's lack of compliance with the Americans with Disabilities Act ("ADA") in the context of a termination of parental rights constitutes an affirmative defense and a parent asserting such affirmative defense "must plead, prove, and secure findings to sustain the defense" or it is "waived." *In re C.M.*, 996 S.W.2d 269, 270 (Tex. App.—Houston [1st Dist.] 1999, no pet.); *accord In re C.L.*, No. 07-14-00180-CV, 2014 WL 5037982, at *3–4 (Tex. App.—Amarillo Oct. 7, 2014, no pet.) (mem. op.); *In re J.I.*, No. 2-04-299-CV, 2005 WL 1047891, at *14 (Tex. App.—Fort Worth May 5, 2005, no pet.) (mem. op.). However, at least one court of appeals has followed foreign jurisdictions in declining to recognize noncompliance with the ADA as an available defense in cases involving termination of parental rights. *See In re S.G.S.*, 130 S.W.3d 223, 229–30 (Tex. App.—Beaumont 2004, no pet.); *cf. In re C.L.,* 2014 WL 5037982, at *3 (describing split among Texas courts of appeals and stating "[o]ur supreme court has not addressed the issue"); *In re A.M.M.*, No. 06-05-00039-CV, 2006 WL 42229, at *5–*6 (Tex. App.—Texarkana Jan. 10, 2006, no pet.) (mem. op.) (concluding issue respecting noncompliance with ADA was waived pursuant to *In re C.M.* and "[e]ven if not waived, there is no authority that such a defense could be properly raised in a proceeding of this nature").

## 2. Application of Law to Facts

In the case before us, we construe Mother's complaint in her third issue as an argument that the trial court erred by terminating her parental rights because DPS failed to comply with the

ADA by accommodating her special needs in providing services to her.  *See In re C.M.*, 996 S.W.2d at 269–70; *see also In re J.I.*, 2005 WL 1047891, at \*14.  Assuming without deciding that Texas recognizes a complaint of lack of compliance with the ADA in cases involving termination of parental rights as an affirmative defense, Mother was required to "plead, prove, and secure findings to sustain the defense" in order to preserve this complaint for appellate review.  *In re C.M.*, 996 S.W.2d at 270.  Mother does not address the requirement to "plead, prove, and secure findings" respecting her complaint or explain how the record shows that requirement was satisfied, nor does the record show Mother specified in the trial court any provision of the ADA with which there was no compliance.  *See id.*; *In re C.L.,* 2014 WL 5037982, at \*4.  Further, Mother does not cite on appeal any applicable requirements of the ADA that were not met or any provisions that were violated.  *See* TEX. R. APP. P. 38.1(i).  On this record, we conclude Mother's third issue presents nothing for this Court's review.

We decide Mother's third issue against her.

### III. CONCLUSION

We decide against Mother on her three issues.  The trial court's order is affirmed.

140723F.P05

/ Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF M.N.M., A CHILD

No. 05-14-00723-CV

On Appeal from the County Court At Law, Kaufman County, Texas
Trial Court Cause No. 87539-CC.
Opinion delivered by Justice Lang, Justices Myers and Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 1st day of December, 2014.