

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-14-00275-CV

IN THE INTEREST OF K.R. AND
A.R., CHILDREN

----------

## FROM THE 233RD DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NO. 233-423731-07

----------

## MEMORANDUM OPINION[1]

----------

Appellant A.M. (Mother) appeals the trial court's order that modified her parental relationships with her children, K.R. and A.R. In eight issues, she contends that the trial court abused its discretion by striking her pleadings and by awarding a judgment against her as a sanction for failing to comply with the court's order concerning discovery; that the evidence is insufficient to support the modification order; that she received insufficient notice that evidence would be

---

[1]See Tex. R. App. P. 47.4.

presented at the final hearing that led to the modification order; and that her husband, who is a medical doctor, should not have been allowed to testify about matters related to her mental health. We affirm.

**Background Facts**

In April 2009, Mother, while represented by counsel, sought a divorce from S.R. (Father). Among other requested relief, she asked to be named with Father as joint managing conservators of the children and to be named as the conservator who had the right to establish their domicile. She also asked the trial court to order Father to pay child support. Mother's divorce petition recited that she owned two real properties in Corpus Christi. Father filed a counterpetition for divorce in which he also sought to be named as the children's primary managing conservator.

During the course of the divorce case, Father filed a motion to compel discovery and for sanctions, contending that Mother had not responded to a request for disclosure and for production. Based on an agreement by the parties, the trial court required Mother to respond to the discovery requests.

Mother and Father eventually entered into a settlement agreement that incorporated a parenting plan. The parenting plan asked the trial court to make Mother and Father joint managing conservators of the children. It also asked the court to render an order on many other provisions concerning Mother's and Father's relationships with the children, including designating particular times in

2

which Mother and Father were entitled to possess them and ordering Father to pay child support.

In May 2009, the trial court entered a final divorce decree. The decree followed the terms of the settlement agreement; among other provisions, it named Mother and Father as joint managing conservators of the children and ordered Father to pay child support. Mother and Father signed the decree, and counsel for each of them also signed it.

In the spring of 2013, Father filed a petition to modify the parental relationships with the children. He pled that the children's and parents' circumstances had materially and substantially changed since the signing of the divorce decree. Specifically, he contended that Mother had been involuntarily committed because of mental health issues and that she was not physically or mentally able to care for the children. He asked to be appointed as the children's sole managing conservator, for the court to order Mother to pay child support, and for the court to grant Mother only limited and supervised visitation with the children. To the petition, Father attached an affidavit in which he asserted that Mother had been sleeping on a porch to avoid being poisoned from gases and had painted her car "with house paint to obscure political messages." The trial court signed an ex parte order temporarily suspending Father's obligation to pay child support.

Through counsel, Mother filed an answer to Father's modification petition. After she did so, the trial court signed an order in which it named Father as the

3

children's temporary sole managing conservator and named Mother as their temporary possessory conservator. In September 2013, the trial court held a hearing because Mother had resisted Father's request for her to produce her mental health records. Mother's counsel eventually withdrew, stating that she was unable to communicate with Mother "in a manner consistent with good attorney-client relations."

In June 2014, Father filed a motion to compel discovery and for sanctions. He contended that Mother had refused to appear at a noticed deposition and asked the trial court to order her to appear at a deposition or to strike her pleadings and grant a final judgment in his favor. The next month, the trial court signed an order requiring Mother to appear for a deposition to be held on July 17, 2014. The court also required her to pay expenses and attorney's fees associated with the previously scheduled deposition.

Mother did not appear at the rescheduled deposition, so Father filed a second motion for sanctions. He asked the court to strike Mother's pleadings, to grant a final modification judgment, and to prohibit her from conducting any discovery or presenting any evidence.

The trial court held a hearing on Father's second motion for sanctions and granted the motion. The court's July 29, 2014 order stated that Mother was "disallowed from any further discovery of any kind" and was "prohibited from introducing or presenting evidence of any kind." It also stated, "The pleadings of [Mother] are stricken, and a Final Judgment of Modification is GRANTED in favor

4

of [Father], together with a judgment for all of his attorney's fees expended herein, . . . for which let execution issue."

A little more than a month later, on September 3, 2014, the trial court held a hearing on Father's August 2014 motion to sign a final order in the modification suit. Mother did not attend. The court received testimony from Father and granted his petition for modification of Mother's and Father's parental relationships with the children. In its final modification order, the trial court appointed Father as the children's sole managing conservator with the right to designate their primary residence and appointed Mother as a possessory conservator with a limited right of supervised visitation. The court also ordered Mother to pay monthly child support and to pay Father's attorney's fees. Mother brought this appeal.

**The Trial Court's Discovery Sanction**

In her first two issues, Mother contends that the trial court's sanction for her failure to participate in a deposition was unjust and was an abuse of discretion. When a party abuses the discovery process by resisting discovery (such as by failing to attend a deposition), a trial court may impose sanctions. Tex. R. Civ. P. 215.3; *see Sheffield Dev. Co. v. Carter & Burgess, Inc.*, No. 02-11-00204-CV, 2012 WL 6632500, at *5 (Tex. App.—Fort Worth Dec. 21, 2012, pet. dism'd) (mem. op.) ("Trial courts have broad discretion to impose discovery sanctions to secure compliance with discovery rules, to deter other litigants from similar misconduct, and to punish violators."). In appropriate cases, these

5

sanctions may include disallowing further discovery by the resisting party, refusing to allow the resisting party to oppose claims or present evidence, striking the resisting party's pleadings, and rendering a default judgment against the resisting party. Tex. R. Civ. P. 215.2(b)(1), (4)–(5); *see also Hernandez v. Mid-Loop, Inc.*, 170 S.W.3d 138, 144 (Tex. App.—San Antonio 2005, no pet.) (holding that a trial court has discretion to impose sanctions when a party fails to obey the court's order to comply with proper discovery requests); *Darya, Inc. v. Christian*, 251 S.W.3d 227, 232 (Tex. App.—Dallas 2008, no pet.) ("When a trial court finds a party has failed to comply with proper discovery requests, has failed to obey discovery orders, or has otherwise abused the discovery process, the court is authorized to impose a sanction that is just under the circumstances.").

We review a trial court's imposition of discovery-related sanctions for an abuse of discretion. *Petroleum Sols., Inc. v. Head*, 454 S.W.3d 482, 489 (Tex. 2014) (op. on reh'g). The test for an abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but whether the court acted without reference to any guiding rules and principles. *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). The trial court's ruling should be reversed only if it was arbitrary or unreasonable. *Id.*

We follow a two-part test to determine whether a sanction was just. *Petroleum Sols., Inc.*, 454 S.W.3d at 489 (citing *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991) (orig. proceeding)); *see also* Tex. R. Civ. P. 215.2(b) (requiring a sanction for failing to comply with discovery requests

6

to be just).    First, a direct relationship must exist between the offensive conduct, the offender, and the sanction imposed.  *Petroleum Sols., Inc.*, 454 S.W.3d at 489.  "To meet this requirement, a sanction must be directed against the wrongful conduct and toward remedying the prejudice suffered by the innocent party."  *Id.*; *see also Buck v. Estate of Buck*, 291 S.W.3d 46, 55–56 (Tex. App.—Corpus Christi 2009, no pet.) (stating that in determining whether to impose sanctions, the trial court is not limited to considering only the specific violation for which sanctions are finally imposed but may also consider everything that has occurred during the history of the litigation).

"Second, a sanction must not be excessive, which means it should be no more severe than necessary to satisfy its legitimate purpose.    This prong requires the trial court to consider the availability of lesser sanctions and, 'in all but the most exceptional cases, actually test the lesser sanctions.'"  *Petroleum Sols., Inc.*, 454 S.W.3d at 489 (citation omitted); *see Newby v. Uhl*, No. 02-10-00466-CV, 2012 WL 3115628, at \*2–3 (Tex. App.—Fort Worth Aug. 2, 2012, no pet.) (mem. op.) (reciting and applying these standards for discovery-related sanctions); *see also Fast Invs., LLC v. Prosper Bank*, No. 02-13-00026-CV, 2014 WL 888438, at \*3 (Tex. App.—Fort Worth Mar. 6, 2014, no pet.) (mem. op.) ("The law is well-settled that before imposing sanctions for discovery abuse under rule 215.2(b), the trial court must analyze the available sanctions, consider whether less stringent sanctions would promote compliance, and narrowly tailor the sanction imposed to remedy the offensive conduct.").    Case-determinative

7

sanctions—so-called death penalty sanctions—may be imposed only when it is "fully apparent that no lesser sanctions would promote compliance with the rules." *Cire*, 134 S.W.3d at 841.

Under these standards, we cannot conclude that the trial court abused its discretion by ordering case-determinative sanctions against Mother. *See Petroleum Sols., Inc.*, 454 S.W.3d at 489. Father's counsel first noticed a deposition for June 20, 2014. The record contains a copy of a June 4, 2014 e-mail from Mother to Father's counsel in which she stated that she was unavailable for the deposition and that she did not have money to travel from Corpus Christi to Fort Worth for it. Father's counsel responded to the e-mail through a June 10 e-mail that informed Mother that the deposition was to occur in Tarrant County and that gave Mother a list of six dates in late June and early July for the deposition. The June 10 e-mail stated that if Mother did not select one of the six alternative dates, the deposition would take place on June 20.

According to a statement made by Father's counsel and transcribed by a court reporter on June 20, Mother did not respond to the June 10 e-mail nor attend the June 20 deposition. Thus, Father filed a motion to compel discovery and for sanctions.[2] He asked the trial court to require Mother to attend a deposition, to strike her pleadings, and to grant a judgment against her. The trial court did not impose the greater sanctions requested by Father, but it ordered

---

[2]As stated above, Father also filed a motion to compel discovery against Mother in 2008 during proceedings related to their divorce.

Mother to appear for a deposition on July 17, 2014, to pay $500 to Father, and to pay $250 to Father's counsel.

Father's counsel then gave Mother notice by mail, certified mail, and e-mail of the deposition to be taken on July 17. The notice sent by Father's counsel stated, "Your failure to attend your deposition on July 17, 2014 will result in request for additional sanctions according to Texas Rules of Court." Mother did not appear at the July 17 deposition, so Father filed another motion for sanctions. He again asked the trial court to strike Mother's pleadings and to enter a final judgment on his behalf. He argued, "These severe terminal sanctions are appropriate because the Court has already used lesser sanctions to secure compliance . . . ."

The trial court held a hearing on Father's second motion for sanctions, and Mother attended the hearing without counsel. Father called Mother to testify. During her testimony, Mother claimed that personal business and financial hardships[3] had prevented her from traveling to Fort Worth for the deposition and that she had informed Father's attorney that she could not be there. She also repeatedly talked about matters unrelated to the motion for sanctions.[4] She

---

[3]Mother implied that if she had paid the cost of gas to travel to Fort Worth for the deposition, she could not have paid her electric bill.

[4]The record from that hearing shows numerous occasions in which the trial court sustained Father's objections to the relevance of Mother's testimony. The record also shows occasions in which Mother talked over the trial court. During the hearing, the court assessed two $500 contempt sanctions against Mother for

9

appeared to state that she would not comply with any order to appear at a deposition; during an exchange in which the trial court was attempting to get her to stop talking, she said, "I'm not going to subject myself to . . . deposition." During Mother's argument toward the end of the hearing, she said,

> I do not have the funds to continue to be abused by this court. [Father] was fully aware that I didn't have the funds . . . due to the continuing and ongoing abuse by this court system, protected by all liability by the State of Texas laws. *So feel free to hold me in contempt and give me another fine, Judge . . . .*
>
> . . . .
>
> . . . I don't expect [the court] to support anyone other than [Father], based on the practices that I have endured . . . . [Emphasis added.]

Under these circumstances, the trial court could have reasonably determined that its less severe sanctions against Mother had not been effective in securing her appearance at a deposition and that other sanctions would be likewise ineffective. Based on Mother's statements and her contumacious attitude toward the court at the sanctions hearing, her resistance to producing written discovery earlier in the litigation, and her own former trial counsel's statement that she was unable to effectively communicate with Mother, the trial

---

her insistence on continuing to talk after the trial court had instructed her not to, but at the end of the hearing, the court withdrew those sanctions.

court could have reasonably found that Mother would not attend a deposition even absent her asserted financial hardships.[5]

We note that when the trial court granted Father's second sanctions motion, it recited that it had considered the "criteria set out in the TransAmerica[n] . . . case."[6]  *See* 811 S.W.2d at 917.  Mother relies primarily on *TransAmerican* to contend that the trial court's sanctions are erroneous.  *See id.* But *TransAmerican* is distinguishable; there, the trial court imposed case-determinative sanctions based on TransAmerican's president's failure to appear for one deposition.  *See id.* at 915–16.    The supreme court held that the sanctions were unjust and excessive.  *Id.* at 917–18.  The supreme court emphasized that the trial court had not considered imposing a lesser sanction and that the record suggested that a lesser sanction might have been effective. *Id.* at 918.  In contrast, the trial court in this case imposed a lesser sanction that was not effective in securing Mother's appearance at the deposition, and the circumstances described above could have reasonably indicated to the court that

---

[5]We note that these asserted hardships did not prevent Mother from personally appearing at the hearing on Father's second motion for sanctions, which occurred only twelve days after July 17 (the date the trial court had ordered the deposition to occur on).

[6]We disagree with Mother's contention on appeal that the trial court was required to explain in detail how it had considered and weighed the criteria recited in *TransAmerican*.  *See* 811 S.W.2d at 917; *see also Davis v. Howard*, 436 S.W.2d 225, 229 (Tex. Civ. App.—Austin 1968, no writ) ("In the absence of any showing to the contrary, we presume that the trial court weighed the evidence by the proper rule.").

11

further progressive sanctions would likewise not secure her appearance. *See Aquarium Env'ts, Inc. v. Elgohary*, No. 01-12-01169-CV, 2014 WL 1778266, at *3–5 (Tex. App.—Houston [1st Dist.] May 1, 2014, pets. denied) (mem. op.) (holding that a trial court did not abuse its discretion by excluding the testimony of a party's fact witnesses when those witnesses failed to appear for noticed depositions, the trial court compelled the witnesses to appear for depositions, and the witnesses still did not do so); *In re Commitment of Malone*, 336 S.W.3d 860, 865 (Tex. App.—Beaumont 2011, pet. denied) (concluding that a trial court did not abuse its discretion by striking a party's pleadings in light of the party's "continued refusals to answer questions in a deposition").

We cannot conclude that the trial court acted without reference to guiding rules or principles, and therefore abused its discretion, by granting case-determinative sanctions against Mother. *See Cire*, 134 S.W.3d at 838–39; *see also* Tex. R. Civ. P. 215.2(b). Thus, we hold that the sanctions were not erroneous, and we overrule Mother's first two issues.

**The Sufficiency of the Evidence Supporting Modification**

In her third, seventh, and eighth issues, Mother contends that the evidence is legally and factually insufficient to support the trial court's modification decision. We review a trial court's order modifying conservatorship for an abuse of discretion. *In re T.D.C.*, 91 S.W.3d 865, 872 (Tex. App.—Fort Worth 2002, pet. denied) (op. on reh'g); *see King v. Lyons*, 457 S.W.3d 122, 126 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Legal and factual sufficiency of the evidence

12

are not independent grounds of error but are relevant factors in determining whether the trial court abused its discretion. *T.D.C.*, 91 S.W.3d at 872. When applying the abuse-of-discretion standard to a trial court's decision to modify its provisions related to possession and custody of children, we ask first whether the trial court had sufficient information on which to exercise its discretion, applying a traditional sufficiency review, and if so, whether it acted reasonably in the application of its discretion. *Blackwell v. Humble*, 241 S.W.3d 707, 715 (Tex. App.—Austin 2007, no pet.). If some evidence of a substantive and probative character exists to support the trial court's modification decision, there is no abuse of discretion. *In re M.A.M.*, 346 S.W.3d 10, 14 (Tex. App.—Dallas 2011, pet. denied).

A trial court may modify conservatorship of a child if the modification is in the child's best interest and the circumstances of the child or a conservator have materially and substantially changed since the rendition of the existing order.[7] Tex. Fam. Code Ann. § 156.101(a)(1) (West 2014); *In re A.E.A.*, 406 S.W.3d 404, 409 (Tex. App.—Fort Worth 2013, no pet.). A parent's deteriorating mental health may qualify as a material and substantial change that supports modification of conservatorship. *See In re J.H.W.*, No. 14-03-00024-CV, 2004

---

[7]Mother challenges the sufficiency of the evidence to prove a material and substantial change but does not challenge or discuss the sufficiency of the evidence to show that modification is in the children's best interest. Therefore, we will limit our analysis to the issue of whether the evidence proved a material and substantial change.

WL 1263254, at *2–3 (Tex. App.—Houston [14th Dist.] June 10, 2004, no pet.) (mem. op.) (holding that a mother's threat to kill herself and a child, coupled with the mother's history of psychological issues, qualified as a material and substantial change); *see also In re O.E.W.-K.*, No. 02-10-00199-CV, 2011 WL 1225470, at *26 (Tex. App.—Fort Worth Mar. 31, 2011, no pet.) (mem. op.) (expressing that a parent's mental instability may contribute to a finding that a parent could endanger a child); *In re C.D.*, 664 S.W.2d 851, 853 (Tex. App.—Fort Worth 1984, no writ) (explaining that a parent's mental illness is a relevant factor on issues related to the care and custody of a child).

At the September 2014 hearing (which Mother did not attend), when Father's counsel asked him how his relationship with Mother had changed since the 2009 divorce, he testified,

> It had been contentious from the beginning. The one singular thing that was very evident in her -- *change in her demeanor and what I thought was leading to an unsafe situation* was on one -- April of last year -- I don't recall exactly the date -- she had called me to come over to help her at her home[,] . . . which was very unusual since she rarely called me. At that time, I did notice . . . her to be disheveled. She had some concerns about the safety of the home that she was living in, stating that there was some -- something that she smelled -- she thought it was gas -- at that time, coming through the floor of the home.[8] She was working on the attic and the back porch, and there was some difficulty with the bracing of the stairs that you pull down, and she asked -- she asked me to assist her in fixing that and I did. During that conversation, she did make references to being concerned about Homeland Security and basically implied that she might be in trouble with Homeland Security and that there were

---

[8]Father testified that he did not smell any "noxiousness in the air" at Mother's home.

14

some issues in regards to her potentially being . . . arrested or being sought. [Emphasis added.]

Father then testified that he had a "lot of concern" for Mother's state of mind; that Mother had been admitted to a mental health facility; that she was combative while there; and that to his knowledge, she had not obtained further treatment for her mental health problems after her discharge from the facility. Father testified that Mother had visited with the children only about five times from August 2013 through September 2014, and he attributed Mother's sporadic visits to her mental health problems.

Father opined that the deterioration of Mother's mental health qualified as a material and substantial change since the 2009 divorce. He testified that the children were doing "extremely well" under his care and that the children's best interest required his appointment as their sole managing conservator.

The trial court admitted Mother's medical records. The records establish that Mother was admitted to a mental health facility in April 2013[9] and was discharged two weeks later. They also show that prior to her admission, she had been recklessly "driving her car around El Paso [while] very disheveled," that she had been afraid that clones of her family members were trying to kill her, and that she had believed that Homeland Security was "after her." The records also establish other matters illustrating Mother's mental health problems, including her

---

[9]Father filed his original petition seeking modification of conservatorship that month.

15

belief that she had passed post-traumatic stress disorder to her son through breastmilk.

While Mother was at the mental health facility, she was diagnosed with severe bipolar disorder that included psychotic features. She was poorly groomed, loud, irritable, paranoid, suspicious, argumentative, defensive, demanding, and "in complete denial of her mental illness and . . . of [her] need [for] psychiatric treatment." She was "especially hesitant to take any psychotropic medications" because she believed that she did not need them and that they were "poison." Upon her discharge, her thinking was clearer, and she was more pleasant and cooperative. But she had not completely normalized, was "still a little bit delusional," and was "somewhat in denial of her mental illness."

We conclude that the trial court could have reasonably found that the evidence proving deterioration of Mother's mental health after the rendition of the divorce decree in 2009 and her denial about that deterioration qualified as a material and substantial change to support modification. *See* Tex. Fam. Code Ann. § 156.101(a)(1); *A.E.A.*, 406 S.W.3d at 409. Thus, we hold that the trial court did not abuse its discretion by modifying the conservatorship of the children, and we overrule Mother's third, seventh, and eighth issues. *See T.D.C.*, 91 S.W.3d at 872.

**The Admission of Father's Testimony**

In her fifth and sixth issues, Mother contends that the trial court should not have considered Father's testimony because Father was an interested party, the testimony was uncorroborated, and the testimony lacked proper foundation. She argues that Father, who is a surgeon, should not have been allowed to testify about psychiatric issues and that his testimony was "purely self-serving." But Mother did not obtain a ruling on any objection to Father's testimony on these grounds at the July 2014 hearing on his second motion for sanctions, and she did not object at all to his testimony at the September 2014 hearing because she did not attend it. Thus, we conclude that Mother failed to preserve the complaints in her fifth and sixth issues for our review, and we overrule those issues. *See* Tex. R. App. P. 33.1(a) (requiring that a complaint be made and ruled on to be preserved for appellate review); Tex. R. Evid. 103(a); *In re A.C.,* 394 S.W.3d 633, 645 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

In her fourth issue, Mother argues that she did not receive sufficient notice that "there would be a hearing with additional evidence taken for the final decree on September 3, 2014."[10] A notice of the September 2014 hearing appears in the record. The notice states that the hearing concerned Father's "Motion to Sign Final Order in Suit to Modify Parent-Child Relationship"; the notice does not

---

[10]We construe Mother's argument in her fourth issue to be that she did not receive notice that the September 2014 hearing would be an evidentiary hearing, not that she did not receive notice of the September 2014 hearing at all.

17

indicate whether the trial court intended to receive evidence at the hearing. Mother contends that it was reasonable for her to "assume that no further action would be taken in the proceedings other than signing the proposed order."

Because Mother did not attend the September 2014 hearing, she failed to object to the presentation of evidence at the hearing. And Mother did not at any time thereafter (including through a motion for new trial) complain in the trial court that the court had erred by considering evidence at the September 2014 hearing.[11] Thus, because Mother did not raise the complaint within her fourth issue in the trial court at any time, we hold that she failed to preserve the complaint, and we overrule the issue. *See* Tex. R. App. P. 33.1(a)(1)(A); *Phillips v. Binder*, No. 10-05-00250-CV, 2006 WL 949907, at *3 (Tex. App.—Waco Apr. 12, 2006, no pet.) (mem. op.) ("Phillips did not attend the hearing; thus, no objection was made to any of the testimony or to the documentary evidence admitted; so, those complaints are not preserved for our review."); *Chamberlain v. Alexander*, Nos. 09-00-00174CV, 09-00-00175-CV, 2001 WL 788408, at *3 (Tex. App.—Beaumont July 12, 2001, no pet.) (not designated for publication) (holding that a party waived any error that occurred in a hearing by failing to appear at it).

---

[11]The trial court's September 3, 2014 judgment recites that Father announced ready for trial, that Mother did not appear, and that the trial court considered the "record and the evidence and argument of counsel" in reaching its decision. The judgment also states, "The record of testimony was duly reported by the court reporter . . . ."

18

## Conclusion

Having overruled all of Mother's issues, we affirm the trial court's September 3, 2014 "Final Order in Suit to Modify Parent-Child Relationship."

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and SUDDERTH, JJ.

DELIVERED:  April 7, 2016